## SCHERING CORPORATION

v.

**SUN RAY DRUG CO., a Pennsylvania Corporation**

and

**Consolidated Sun Ray, Inc., a Delaware Corporation, Appellants.**

No. 14256.

United States Court of Appeals Third Circuit.

Argued March 8, 1963.

Decided July 8, 1963.

Myron Harris, Philadelphia, Pa., for appellants.

Abraham M. Lowenthal, New York City (James F. McMullan, James F. McMullan, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Leon G. Telsey, Telsey & Lowenthal, New York City, on the brief), for appellee.

Before BIGGS, Chief Judge and KALODNER and FORMAN, Circuit Judges.

KALODNER, Circuit Judge.

This appeal from the District Court's Order granting a preliminary injunction restraining defendant from selling Coricidin, plaintiff's trademarked product, below its fair trade price, in unfair competition as that term is defined in the Pennsylvania Fair Trade Act,[1] presents two issues:

(1) Did the District Court err in finding that the requisite jurisdictional amount of $10,000 has been established?

(2) Did the District Court abuse its discretion in granting a preliminary injunction?

The following findings of fact were made by the District Court following hearings had on plaintiff's prayer for a preliminary injunction:

1. Plaintiff is a New Jersey corporation with its principal office and place of business in Bloomfield, New Jersey. It is not registered to do business in Pennsylvania.

2. Defendant, Sun Ray Drug Co.,[2] is a Pennsylvania corporation with its principal office and place of business in Philadelphia, Pennsylvania, operating one hundred and fifty stores.

3. Plaintiff is, and has been since at least 1935, engaged in the business of manufacturing and selling drugs, medicines, pharmaceuticals and ethical products.

---

1. Act of June 5, 1935, P.L. 266, §§ 1, 2, as amended 73 P.S. §§ 7, 8.

2. Subsequent to the filing of the instant appeal the parties stipulated that Consolidated Sun Ray, Inc., a Delaware corporation, be added as a defendant. The term defendant, as hereafter used, will be descriptive of Sun Ray Drug Co. and Consolidated Sun Ray, Inc.

4. Plaintiff has expended large sums of money in promoting and advertising its products under its name and registered trademarks and has established a valuable reputation and good will for such products and the trademarks under which they are produced and sold.

5. Plaintiff's advertising program consists of advertising in trade journals which are circulated among pharmacies and other retailers of its products, among wholesalers of its products and among hospitals and physicians. It also consists of providing pharmacies with point-of-sale displays of its products and efforts on the part of its detail men (who are salesmen) to promote the sale and use of its products through physicians, pharmacies and the like. It has also engaged, and is presently engaging, in an advertising and promotional campaign on television in a test market served by an Indiana television station. The amounts expended nationally by the plaintiff in its advertising and promotional campaigns have been at the rate of approximately $5,000,000 annually for the five full years ending with the year 1961, and its national advertising and promotional expense during the year 1962 is running at approximately the same rate. The plaintiff's expenditures for advertising and promoting its "Coricidin" line of products during the same periods have been at the annual rate of approximately $750,000.

6. The annual rate of the plaintiff's gross sales of its products, all of which are identified by its name and trademarks, is approximately $80,000,000 of which approximately $40,000,000 represents domestic gross sales in the United States and approximately $10,000,000 represents domestic gross sales of the plaintiff's "Coricidin" products.

7. The value of the plaintiff's good will is substantial and the amount in controversy in this action is in excess of $10,000.

8. The sale of the plaintiff's products bearing the plaintiff's trademarks below their established fair trade prices will materially and adversely affect plaintiff's good will.

9. The plaintiff is the owner of three registered trademarks which are material in this case, namely, the name "Schering" (U. S. Trademark Registration No. 588,824), the name "Schering" combined with representations of a flask and a crucible (Registration No. 324,677) and the word "Coricidin" (U. S. Trademark Registration No. 533,777) all of which are currently in use by the plaintiff.

10. Plaintiff's trademarks are affixed to and displayed on the containers in which the plaintiff's products are packaged and, when possible, on the products themselves.

11. Pursuant to the Pennsylvania Fair Trade Act, Act of June 5, 1935, P.L. 266, as amended 73 P.S. Sections 7–11, plaintiff has entered into approximately eighty agreements with retail dealers in the Greater Philadelphia marketing area in Pennsylvania under which plaintiff established minimum retail prices for its over-the-counter products, including the various products sold by it under the Coricidin trademark.

12. The products manufactured by the plaintiff and bearing the trademarks owned and used by the plaintiff are in fair and open competition with commodities of the same general class manufactured, produced and sold by others.

13. On or about December 14, 1961 plaintiff notified the defendant at its principal office at 8000 Penrose Avenue, Philadelphia, Pennsylvania, of plaintiff's minimum retail prices for its over-the-counter products which it had established under the provisions of the Pennsylvania Fair Trade Act.

14. Since December 14, 1961 defendant has been selling "Coricidin" products of the plaintiff at less than the minimum retail prices fixed therefor by the plaintiff. The aforesaid notice with which was enclosed a copy of one of the plaintiff's fair trade contracts and a copy of its current fair trade price list was duly delivered to the defendant.

15. There is no evidence that the defendant's sale of the plaintiff's products at retail at prices less than those stipulated in plaintiff's contracts with retailers under the Pennsylvania Fair Trade Act were for the purpose of closing out defendant's stock of such products for the purpose of discontinuing delivery thereof or were sales of perishable or deteriorating goods or were sales made by an officer acting under the orders of any court.

The District Court stated its Conclusions of Law as follows:

1. This Court has jurisdiction over the parties to and the subject matter of this action.

2. Defendant has wilfully and knowingly offered for sale and sold "Coricidin" products in violation of the provision of the Pennsylvania Fair Trade Act.

3. The aforesaid actions of the defendant constitute unfair competition under the Pennsylvania Fair Trade Act.

4. The continued violation by the defendant of the Pennsylvania Fair Trade Act threatens irreparable injury to the plaintiff's good will in its "Coricidin" products.

5. Plaintiff is entitled to a preliminary injunction.

Defendant here challenges only two of the District Court's determinations: (1) that "the amount in controversy in this action is in excess of $10,000" and (2) that the defendant's sales of Coricidin at less than established fair trade price "threatens irreparable injury to the plaintiff's good will in its 'Coricidin' products".

The first of these challenges goes to the jurisdictional issue, and the second, to the abuse of discretion issue stated at the outset of this opinion.

The thrust of defendant's point with respect to the $10,000 jurisdictional amount is that the plaintiff failed to prove any "loss" by reason of the defendant's conduct and that it was plaintiff's burden to establish either actual or threatened loss or damage of at least $10,000.

It cites in support of its contention Calvert Distillers Company v. Wish, 259 F.2d 323 (7 Cir. 1958) and Seagram-Distillers Corp. v. New Cut Rate Liquors, 245 F.2d 453 (7 Cir. 1957), cert. den. 355 U.S. 837, 78 S.Ct. 61, 2 L.Ed.2d 48, which held that where the defendant challenges plaintiff's allegation of jurisdictional facts, viz. amount of caused or threatened damage, the burden is on the plaintiff to prove the amount is of jurisdictional dimension.

With respect to these cases we must say that they are in direct conflict with our holdings in Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79, 81 (1958), and John B. Kelly, Inc. v. Lehigh Nav. Coal Co., Inc., 151 F.2d 743, 746 (1945), cert. den. 327 U.S. 779, 66 S.Ct. 530, 90 L.Ed. 1007 (1946), where we held that in determining jurisdiction in an equity case based on diversity, the jurisdictional amount is to be calculated on the basis of the property right which is being injured, and if the property right has a value in excess of the jurisdictional amount (there $3,000 and here $10,000) that the federal court has jurisdiction even though the plaintiff has not suffered, or is threatened with, the jurisdictional amount of damages at the time the suit was instituted.

In the instant case defendant does not challenge the fact-finding of the District Court that the value of the plaintiff's property right—good will—in its Coricidin products is in excess of the jurisdictional amount of $10,000. It could

scarcely do so in the face of the undisputed fact-finding that plaintiff's expenditures for advertising and promoting its Coricidin line of products during the past five years has been at an annual rate of $750,000. Further, defendant does not dispute the fact-finding that its sale of Coricidin below its established fair trade price will materially and adversely affect plaintiff's good will.

In view of our prior rulings, and on the facts here appearing, we cannot subscribe to defendant's contention with respect to the jurisdictional issue.

There is a further compelling reason why defendant's contention with respect to the jurisdictional issue must be rejected.

■ This is a diversity case and "A federal court sitting in a diversity case must apply the same law as would a court of the state in which the district court is located." Lind v. Schenley Industries, Inc., 278 F.2d 79, 84 (3 Cir. 1960), cert. den. 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60. The right sought to be enforced here is a right which accrues under state law —the Pennsylvania Fair Trade Act—and we must look to that law and to the decisions of the Pennsylvania courts with respect to its application.

In Mead Johnson & Company v. Martin Wholesale Distributors, Inc., 408 Pa. 12, p. 16, 182 A.2d 741, p. 743 (1962) the Supreme Court of Pennsylvania, in construing and applying the Pennsylvania Fair Trade Act, ruled:

> "It is not necessary in an action of this kind for the plaintiff to prove a price war or to establish monetary damages. This is due to the fact that it is practically impossible to demonstrate evidentially just how much the plaintiff has lost and will lose by the defendant's price-cutting practice. *The evil aimed at is not the underselling itself, but the assault made on the good name of the plaintiff's products and the good will engendered thereby.*" (emphasis supplied)

In Gulf Oil Corporation v. Mays, 401 Pa. 413, 416, 164 A.2d 656, 658 (1960) it was held that the Pennsylvania Fair Trade Act was "an appropriate exercise of the state police power reasonably calculated to prevent price-cutting and 'loss-leader' practices which *debase the good-will of a product* known by its brand or trademark, injuring both the distributor and public in general."

■ The cases cited make it clear that the protection of the property right of "good will" is one of the primary objectives of the Pennsylvania Fair Trade Act and that a Pennsylvania court would be required to grant injunctive relief where the evidence established violation of the provisions of the Act.

■ There remains for disposition the point that the District Court abused its discretion in granting a preliminary injunction. It is premised on the contention that the District Court failed to "balance the equities"—the possible injuries to the parties as they may be affected by the granting or withholding of the injunction. In support, defendant cites our decision in Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, 268 F.2d 569 (1959). That case on its facts is inapposite. Applicable, here, however, is its holding (268 F.2d p. 573) that "The granting or denying of a preliminary injunction rests in the sound discretion of the trial court and will not be disturbed upon appeal 'unless contrary to some rule of equity, or the result of an improvident exercise of judicial discretion'."

■ On review of the record we cannot say that the granting of the preliminary injunction in the instant case was "contrary to some rule of equity, or the result of an improvident exercise of judicial discretion."

For the reasons stated the Order and Decree of the District Court granting a preliminary injunction will be affirmed.