C. F. HORNBACK and Louis P. Tschiffely, Plaintiffs-Appellants,

v.

BROTHERHOOD OF RAILROAD SIGNALMEN et al., Defendants-Appellees.

LOUISVILLE & NASHVILLE RAILROAD CO., Defendant-Appellant,

v.

BROTHERHOOD OF RAILROAD SIGNALMEN et al., Defendants-Appellees.

BROTHERHOOD OF RAILROAD SIGNALMEN, Defendant-Appellant,

v.

C. F. HORNBACK and Louis P. Tschiffely, Plaintiffs-Appellees,

and

Louisville & Nashville Railroad Co., et al., Defendants-Appellees.

Nos. 16396–16398.

United States Court of Appeals, Sixth Circuit.

May 27, 1965.

Marshall P. Eldred, Louisville, Ky., Brown & Eldred, Louisville, Ky., of counsel, for C. F. Hornback et al.

John P. Sandidge, Louisville, Ky., Woodward, Hobson & Fulton, H. G. Breetz, M. D. Jones, Louisville, Ky., on brief, for Louisville & Nashville R. Co.

Milton Kramer, Martin W. Fingerhut, Schoene & Kramer, Washington, D. C., Robert E. Hogan, Louisville, Ky., for Brotherhood of Railroad Signalmen et al.

Before WEICK, Chief Judge, and CECIL and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Although other issues have been presented both on briefs and oral argument, the only question now before this court for determination is whether the district court abused its discretion in denying the motions for a preliminary injunction.

First we summarize the background of the litigation, as set forth in the pleadings. On January 10, 1951, the Railway Labor Act was amended so as to permit union shop contracts. 64 Stat. 1238; 45 U.S.C. § 152, Eleventh. On or about February 5, 1951, the Brotherhood of Railroad Signalmen (herein referred to as the Union), together with a number of other labor organizations, served upon the Louisville and Nashville Railroad Company (herein referred to as the Railroad) and all other major railroads in the United States, notices pursuant to § 6 of the Railway Labor Act, 45 U.S.C. § 156, requesting the railroads to enter into negotiations for union shop agreements. The railroads declined or refused to confer with the unions or to agree to the execution of union shop contracts. Thereupon the unions invoked the services of the National Mediation Board pursuant to § 5, First (a) of the Railway Labor Act, 45 U.S.C. § 155, First (a). After the railroads had refused to agree to mediation and the unions had declined to agree to arbitration, the National Mediation Board terminated its services on November 6, 1951, and certified the dispute to the President of the United States.

Thereafter the President, pursuant to § 10 of the Railway Labor Act, 45 U.S.C. § 160, appointed a Presidential Emergency Board to investigate the dispute and report to him. The Emergency Board was convened on November 15, 1951, and submitted its report to the President on February 14, 1952, recommending that the railroads and the unions enter into union shop agreements with voluntary checkoff provisions. Thereafter the unions and the Railroad carried on negotiations at sporadic intervals, but no agreement was reached as to a union shop.

On October 13, 1958, certain non-union employees of the Railroad (herein referred to as plaintiffs) filed a complaint against the Railroad and the Union, seeking a declaratory judgment. The complaint averred, among other things, that the Railroad will agree with the Unions with respect to a union shop because of its fear of an immediate strike. Among other averments of the complaint are the following:

"(b) Plaintiffs believe and allege to be true that the periodic dues, initiation fees and assessments which they, and the classes represented by them, will be required to pay to the unions under the union shop agreement as aforesaid will be in excess of the amounts necessary for and attributable to collective bargaining. The unions will impose upon plaintiffs and the classes represented by them and require them to pay and collect from them sums of money, whether in the form of dues or assessments, not germane to collective bargaining but to support ideological and political doctrines and candidates which plaintiffs and the classes represented by them are not willing to support and lawfully cannot be forced to support, and sums of money whether in the form of dues or assessments, for insurance and benefit funds, legislative and political propaganda, election funds, publishing of papers, magazines and other periodicals, convention expenses and personal expenses of various officers of such labor organizations not germane to collective bargaining, which plaintiffs and the classes represented by them are not willing to pay and lawfully cannot be forced to pay.

"(c) The use by the union of such periodic dues, initiation fees and assessments to be collected from the plaintiffs and the classes represented by them, contrary to their will, for the purposes set out in the preceding paragraph will be in violation and contravention of the rights guaranteed to the plaintiffs and the classes represented by them by the First and Fifth Amendments to the Constitution of the United States, in that plaintiffs and the classes represented by them will be denied the free exercise of conscience, associa-

tion, thought and expression and will be deprived of liberty and property without due process of law."

Among the other things, the complaint prayed for a declaration to the following effect:

"That the use by the unions of periodic dues, initiation fees and assessments for any of the purposes enumerated in Paragraph 6 above is not authorized by the Railway Labor Act, as amended, and will be in conflict with the provisions, intent and purpose of said Act, and will be in violation and contravention of the rights, guaranteed to the plaintiffs and the classes represented by them by the First and Fifth Amendments to the Constitution of the United States in that they will be denied the free exercise of conscience, association, thought and expression and deprived of liberty and property without due process of law. Such use of such dues, fees and assessments by the unions as aforesaid will, therefore, be illegal and contrary to law."

Various other issues are raised by the complaint. Other pleadings and motions were filed by the parties, including motions for summary judgment, which have not been passed upon and are still pending in the district court.

While this litigation was pending, the Supreme Court handed down its decisions in International Association of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141, and Brotherhood of Railway and Steamship Clerks v. Allen, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235.[1]

The latest series of negotiations between the Railroad and the Union began in October 1964. During the course of these negotiations the Union submitted a proposed union shop agreement to the Railroad, which the Railroad refused to sign. During the second week of January 1965 a strike vote was taken by the Union, resulting in a vote of 245 for a strike and four against a strike, with six employees refusing to vote. A strike was set for January 18, 1965. Two days before the strike date the plaintiffs and the Railroad filed motions for temporary restraining orders and preliminary injunctions against the Union to enjoin it from striking for a union shop agreement. The district court granted a temporary restraining order and conducted hearings on the motions for a preliminary injunction, during which a substantial amount of evidence was introduced.

On February 5, 1965, the district court entered an order denying the motions of the plaintiffs and the Railroad for a preliminary injunction, the text of which is set forth in the margin.[2]

1. It is now conceded by plaintiffs that their complaint cannot be sustained as a class action under these decisions.

2. "Pursuant to order of the Court this case came on for hearing on motions of the plaintiffs, C. F. Hornback and Louis P. Tschiffely, and the defendant, Louisville and Nashville Railroad Company, for a preliminary injunction. The Court has heard oral evidence in open court and argument of counsel on the motions, and has considered briefs in support of and in opposition to the motions.

"The defendant union, Brotherhood of of Railroad Signalmen, has filed in this action a statement that during the pendency of this action it will neither request nor execute an agreement with the defendant railroad, under § 2, Eleventh of the Railway Labor Act, which does not contain a provision for a reduction in the initiation fees, dues, and assessments of members of the craft of signalmen employed by defendant railroad who have made known or hereafter by timely notice make known to the defendant union their objection to the expenditure for political purposes of any part of the initiation fees, dues, and assessments which defendant union would collect from them under a union-shop agreement. Defendant union avers that said reduction in initiation fees, dues, and assessments of objecting employees shall be equivalent to the amount which would be determined if an objecting employee's obligation under the union-shop agreement was reduced in the

The plaintiffs and the Railroad appealed to this court from the denial of the preliminary injunction. The district court granted the motions of plaintiffs and the Railroad for injunctions pending this appeal. This court advanced the case on its docket for hearing. Under the disposition that we make of the appeals, it is not necessary to pass upon the action of the district court in granting injunctions pending appeal, this issue having become moot with the rendering of this opinion.

We come now to the single question to be determined at the present posture of the case, that is, did the district judge abuse his discretion in denying the motions for preliminary injunction.

In American Federation of Musicians v. Stein, 213 F.2d 679, 683 (C.A.6), cert. denied, 348 U.S. 873, 75 S.Ct. 108, 99 L.Ed. 687, this court approved the following general rule as to the scope of review of the action of the district court in granting or denying a preliminary injunction pending final hearing:

"The granting or denial of a temporary injunction pending final hearing is within the sound judicial discretion of the trial court, and upon appeal an order granting such an injunction will not be disturbed unless contrary to some rule of equity or the result of an improvident exercise of judicial discretion."

On appeal from an order denying a preliminary injunction, this court does not consider the merits of the case further than is necessary to determine whether there has been an abuse of discretion. Wooten v. Ohler, 303 F.2d 759 (C.A.5); Holzer v. United States, 244 F.2d 562 (C.A.8); 3A Ohlinger's Federal Practice, p. 464 (1964); 3 Barron & Holtzoff's Federal Practice, § 1440 (Wright ed. 1958); 7 Moore's Federal Practice, § 65.04[2] at 1630 (2d ed. 1955).

The principal contention urged by plaintiffs and the Railroad, both in the district court and in this court, is that a union shop agreement between the Union and the Railroad would require plaintiffs to pay fees, dues or assessments which the Union will use to support ideological and political doctrines and candidates which plaintiffs are not willing to support, thereby depriving them of constitutional rights as defined by the Supreme Court in the Street and Allen cases.

We have read the transcript of the proceedings before the district judge on the motions for preliminary injunction, including all testimony introduced at that hearing. The attorney for the Union agreed, in response to questions by the district judge, that the Union would neither request nor execute an agreement with the Railroad which does not contain a provision for the reduction of initiation fees, dues and assessments which the Union would collect from plaintiffs under a union shop agreement. The attorney for the Union fur-

---

same proportion that union political expenditures bear to total union expenditures. See Machinists v. Street, 367 U.S. 740 [81 S.Ct. 1784] (1961), and Railway Clerks v. Allen, 373 U.S. 113 [83 S.Ct. 1158] (1963).

"IT IS ORDERED that any member of the craft of signalmen employed by the defendant railroad who objects to the expenditure for political purposes of any part of the initiation fees, dues, and assessments which he would be required to pay to defendant union under a union-shop agreement shall be allowed to intervene in this action by filing with the Clerk of the Court a notice of intervention within sixty days from the date of this order.

"IT IS ORDERED that the motions of the plaintiffs, C. F. Hornback and Louis P. Tschiffely, and the defendant, Louisville and Nashville Railroad Company, for a preliminary injunction be and the same hereby are denied.

"Nothing in this order denying plaintiffs' motion for a preliminary injunction shall be construed as an adjudication on the merits of plaintiffs' cause of action or on plaintiffs' rights to relief, including injunctive relief, which may be proper after a final hearing and determination of this action."

ther agreed that this reduction also would apply to other employees who have made known or hereafter by timely notice may make known to the Union their objection to the expenditure for political purposes of any part of the initiation fees, dues and assessments which may be collected by the Union from such employees. It was expressly agreed that such a reduction would be more than the equivalent of the amount which would be determined if the obligation of the objecting employees under the union shop agreement were reduced in the same proportion that union political expenditures bear to total expenditures, thereby meeting the standards set forth in the Street and Allen decisions.

There was introduced before the district court a statement containing a proposed provision to the foregoing effect to be incorporated in any union shop agreement that may be negotiated between the Union and the Railroad. The same commitment was reiterated by the attorney for the Union in his oral argument before this court. It is our understanding of the position of the Railroad, as expressed on briefs and in oral argument in this court and in the district court, that the Railroad will insist that all rights of its employees, as defined by the Supreme Court in the Street and Allen cases, must be adequately protected in any agreement that may be negotiated between the Union and the Railroad, if and when any such agreement is accomplished.

We must assume, as did the district court, that this commitment will be honored both by the Railroad and the Union and that a provision to the foregoing effect will be incorporated into any union shop agreement that may be entered into between the Railroad and the Union. If not, it will be within the jurisdiction of the district court to enter appropriate orders.

We hold that the district court did not abuse its discretion in denying the motions for preliminary injunction. The case is remanded to the district court for further proceedings.