Peter MAAS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20210.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 21, 1966.

Decided Nov. 25, 1966.

Mr. Philip W. Amram, Washington, D. C., with whom Messrs. Gilbert Hahn, Jr., and Bardyl Rifat Tirana, Washington, D. C., were on the brief, for appellant.

Mr. John C. Eldridge, Atty., Dept. of Justice, with whom Asst. Atty. Gen. John W. Douglas, Messrs. David G. Bress, U. S. Atty., and Alan S. Rosenthal, Atty., Dept. of Justice, were on the brief for appellee. Mr. Robert V. Zener, Atty., Dept. of Justice, also entered an appearance for appellee.

Before BAZELON, Chief Judge, DANAHER, Circuit Judge, and BASTIAN, Senior Circuit Judge.

BASTIAN, Senior Circuit Judge.

This is an appeal from an order of the District Court preliminarily enjoining appellant from disseminating or publishing in any form copies of or excerpts from a manuscript by Joseph Valachi written while Valachi was incarcerated in the District of Columbia Jail. The United States brought the action in this case to obtain a permanent injunction requiring appellant to comply with a "Memorandum of Understanding" which precluded him from publishing or disseminating the manuscript without the approval of the Department of Justice.

Valachi is a federal prisoner, having been sentenced for certain offenses against the United States. He was, by authority of the Attorney General acting pursuant to 18 U.S.C. § 4082, transferred from the Federal Correctional Institution in Atlanta, Georgia, where he was serving his sentences, to various places of confinement and on August 30, 1963, to the District of Columbia Jail. While in jail there, Valachi prepared a manuscript describing in detail his criminal career and criminal organizations of which he was a member.

In 1956, acting through the Bureau of Prisons and pursuant to 18 U.S.C. §§ 4001 and 4042, the Attorney General had promulgated a regulation which provided that a manuscript prepared by a federal prisoner should not be approved for publication or released "if it deals with the

life history or the criminal career of the writer."[1]

In December 1965, according to the findings of fact made by the District Court and as appears in the record, the Department of Justice decided to make a conditional exception of this regulation, and gave Valachi permission to engage an editor to assist him in preparing his manuscript for possible publication. Thereafter, the Department entered into the above mentioned Memorandum of Understanding with Valachi and appellant, whom Valachi had chosen to edit the manuscript. The memorandum, signed by appellant and by the then attorney for Valachi, provided in paragraph 2 as follows:

> "The Department retains the complete and absolute right to approve the final edited manuscript prior to publication or dissemination thereof in any form."

The Department thereupon released two copies of the Valachi manuscript to appellant, subject to the terms and conditions of the memorandum. On February 7, 1966, an agreement was entered into by Valachi, appellant, one Bach,[2] and Valachi's attorney concerning arrangements for editing the manuscript and sale of the rights thereto. This agreement also provided in part that "the manuscript must be approved by the Department of Justice and [Valachi's attorney] before it is submitted to Bach for sale in any form." On the following day, February 8, 1966, appellant was advised by the Department's Director of Public Information that there was a substantial likelihood that publication would not be allowed and that further efforts toward publication might prove useless. Despite this warning, appellant prepared an outline of the proposed book for submission to prospective publishers. The outline, according to the findings of fact and borne out by the record, con-

sisted of edited excerpts from the Valachi manuscript and editorial comments and was entitled "Valachi Book Excerpts."

On March 14, 1966, without obtaining the approval of the Department, appellant sent the outline to Bach to be submitted to prospective publishers. Copies of the outline were also sent on March 15, 1966, to the Register of Copyrights for registration,[3] and to the Department of Justice. Thereafter, on March 16, 1966, the Department decided not to approve any edited or unedited version of the Valachi manuscript for dissemination or publication in any form, and determined that publication or dissemination would be detrimental to law enforcement. Attorneys for appellant and Valachi were advised of this decision on March 17, 1966. The decision is set forth in an affidavit of the Attorney General, and in part, is as follows:

> "2. On March 16, 1966, I decided that publication or dissemination of the Valachi manuscript in any form should not be approved. This decision was prompted by several considerations, including (1) my determination that, in the light of all the circumstances, publication of the manuscript would be detrimental to law enforcement; (2) the policy underlying the Bureau of Prisons' regulation which bars publication of a manuscript dealing with the life history or criminal career of an inmate (Bureau of Prisons Manual Bulletin No. 471); and (3) the dissemination, without Department of Justice approval, of excerpts from the manuscript.

> \*   \*   \*   \*   \*   \*

> "5. In the light of the foregoing considerations, I have determined that it would be contrary to the public interest to depart from the Bureau of Prisons' regulation prohibiting the publication of a manuscript written

---

1. Bureau of Prisons Manual Bulletin No. 471 (June 19, 1956).

2. Bach was engaged as agent for the sale of the book and other rights growing out of publication.

3. The request for copyright was later withdrawn.

by a prisoner which deals with his life in crime. The policies underlying this regulation—that a person convicted of crime should not be allowed to exploit and glamorize his career in crime, and that personal wealth held and enjoyed by an inmate may cause dissension and additional disciplinary problems within the prison society— are too important to be abandoned absent substantial countervailing considerations."

On May 4, 1966, appellant's attorneys advised the Department that appellant would disseminate copies of the "Valachi Book Excerpts" on May 11, 1966, to prospective publishers of the manuscript. Thereupon, the present action was instituted by the United States to enjoin appellant from disseminating in any form copies of or excerpts from the Valachi manuscript and to require the return of all copies of and excerpts from the manuscript to the Department. A preliminary injunction against such dissemination was prayed for and granted by the District Court. The court issued the preliminary injunction and found that appellee was threatened with immediate and irreparable harm for which it had no adequate remedy at law; that interim injunctive relief was necessary to maintain the *status quo;* and that injury to appellee and the public interest which would be suffered were the preliminary injunction denied far outweighed any possible injury to appellant which might be occasioned by the granting of interim relief. The preliminary injunction ordered:

"That [appellant], his agents, assigns, successors, and anyone acting in concert with said persons be and hereby are restrained and enjoined from disseminating or publishing in any form edited or unedited copies of or excerpts from the manuscript prepared by Joseph Valachi while incarcerated in the District of Columbia Jail, Washington, D. C., including but not limited to the document entitled 'Valachi Book Excerpts.'"

It is argued in this court, conceding *arguendo* that the Attorney General may have the power to prevent certain kinds of documents written by a federal prisoner from leaving a federal prison, that once the Attorney General permits the document to leave the federal prison, the First Amendment to the Constitution excludes all future control by the Attorney General over its publication. In addition to the First Amendment argument, it is urged that the Memorandum of Understanding lacks mutuality because there is no promise flowing from the United States to appellant; that, even if the memorandum is not barred by the First Amendment and is supported by a consideration, the exercise of the Attorney General's right amounts to a forfeiture; and finally, that the Attorney General, at the time the Memorandum of Understanding was entered into, had no control over the manuscript and no right to condition its delivery to appellant because Valachi was not under the control of the Attorney General but under the control of the Commissioners of the District of Columbia under D.C.Code § 24–442.

■ It must be borne in mind here that this is not an appeal from a final judgment after a trial or from a summary judgment finally disposing of the case. It is here on the District Court's grant of a prohibitory preliminary injunction aimed at preserving the *status quo.* Appellate courts quite generally view the grant or denial of a preliminary injunction as resting in the sound discretion of the trial court, and limit determination on appeal to whether there has been "abuse of trial court discretion," "clear error," "violation of the rules of equity," or "improvident granting." In our own jurisdiction, in at least two cases, we have addressed ourselves to those issues while upholding District Court denial of preliminary injunction. Thus, in Cox v. Democratic Central Committee, 91 U.S.App.D.C. 416, 200 F.2d 356 (1952), this court said:

"It is settled law that a Court of Appeals will not set aside the action of a District Court in either denying or

granting an application for a preliminary injunction unless the action of the District Court was in clear error or in abuse of discretion."

This analysis was repeated ten years later in Young v. Motion Picture Ass'n of America, 112 U.S.App.D.C. 35, 37, 299 F.2d 119, 121, cert. denied, 370 U.S. 922, 82 S.Ct. 1565, 8 L.Ed.2d 504 (1962):

"Appellants recognized the general rule that a denial of a preliminary injunction will not be set aside on appeal unless the District Court's action constitutes clear error or abuse of discretion, and that ordinarily this court will not consider the merits of the case further than necessary to determine whether that discretion was abused." [4]

Although both of those cases were appeals from denial of a preliminary injunction, appellate courts, with near unanimity, use the same language in passing upon appeals from either the grant or denial of a preliminary injunction.[5]

It is quite evident that in the case before us there was no abuse of discretion by the trial court; and further, as the District Court found, it appears that more harm might be sustained by refusing to grant the preliminary injunction than by granting it. If the preliminary injunction had not been granted, the relief sought by the Government would be mooted, for all practical purposes.[6]

4. Cf. Armour & Co. v. Freeman, 113 U.S. App.D.C. 37, 39, 304 F.2d 404, 406, cert. denied 370 U.S. 920, 82 S.Ct. 1559, 8 L. Ed.2d 500 (1962), where we reversed the District Court's denial of a preliminary injunction to restrain the Secretary of Agriculture from immediately enforcing a new packing regulation amendment because "[o]n consideration of the papers before us, we think it was clearly error to deny [the] motion for a preliminary injunction." [Citing Cox.] We reasoned that "[t]he * * * regulation which is under attack, is capricious and arbitrary on its face * * *"; that "[i]rreparable injury * * * from the enforcement of the regulation is apparent without demonstration * * *"; and that there was "nothing in the record before us to indicate the public interest would be adversely affected by the grant of a preliminary injunction."

5. Celebrity, Inc. v. Trina, Inc., 264 F.2d 956, 958 (1st Cir. 1959); Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 500 (2d Cir. 1962); Schering Corp. v. Sun Ray Drug Co., 320 F.2d 72, 76 (3d Cir. 1963); Leesona Corp. v. Cotwool Mfg. Corp., 315 F.2d 538, 541 (4th Cir. 1963); Nalco Chemical Co. v. Hall, 347 F.2d 90, 92 (5th Cir. 1965); Hornback v. Brotherhood of Railroad Signalmen, 346 F.2d 161, 164 (6th Cir. 1965); Solex Laboratories, Inc. v. Plastic Contact Lens Co., 268 F.2d 637, 638 (7th Cir. 1959); Shearman v. Missouri Pacific R.R., 250 F.2d 191, 195 (8th Cir. 1957); Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964); United States v. Brown, 331 F.2d 362, 364 (10th Cir. 1964).

6. During the course of the argument in this court, appellant stated that he might be in contempt of court if he himself proceeded to write a biography of Valachi. On close questioning of Government counsel by the court on this point, the following colloquy took place:

"Court: Do you think that [appellant] would be subject to action for contempt if he * * * wrote a book himself?

"Government: We certainly concede that [he] can write a book. And if there are any publishers listening, he can write a biography of Valachi. * * *

"Court: Do you have that authority to make that statement?

"Government: Yes, your honor, I have that authority.

"Court: The injunction doesn't go as far as this man might fear.

"Government: Well, the injunction just relates to this book. * * * It just relates to this manuscript, nothing beyond. * * * We wanted to reserve whatever rights we have under the agreement and the law, to have that covered by the permanent injunction. * * *

"Court: Are you authorized to say that if [appellant] writes his own book without quotations [from Valachi] from his own memory, that you would have no cause for contempt?

"Government: Yes, I am so authorized. * * *."

Government counsel made it clear that on final disposition of the case they would seek to preserve all rights to which they felt they were entitled under the Memorandum of Agreement and the law.

Accordingly, we affirm the judgment of the District Court and suggest that the trial of this case be expedited.

Affirmed.

BAZELON, Chief Judge, concurs in the result.