**LIBERTY LOBBY, INC., et al.,**
Appellants,

v.

**Drew PEARSON et al., Appellees.**

**No. 20690.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 1, 1967.

Decided Dec. 27, 1967.

As Amended Feb. 5, 1968.

---

Mr. Harvey B. Bolton, Jr., Washington, D. C., for appellants.

Mr. John Donovan, Washington, D. C., for appellees.

Before BURGER, WRIGHT and TAMM, Circuit Judges.

BURGER, CIRCUIT JUDGE.

This is an appeal from the District Court's denial of a preliminary injunction sought by Appellants to prohibit "dissemination or publication [by Appellee] of information, letters, or documents illegally and unlawfully removed and/or copied from the files of the plaintiffs." The preliminary injunction was sought pending disposition of Appellant's suit for a permanent injunction and damages.

Appellant Liberty Lobby is a political-action or lobbying organization; Appellant Carto is an organizer and treasurer. Appellees Pearson and Anderson publish a newspaper column entitled "Washington Merry-Go-Round," which is syndicated throughout the United States. The complaint charges that Appellee Horne, while an employee of Liberty Lobby, removed and/or copied certain private letters and documents which were in a box in a Liberty Lobby file closet and that Pearson and Anderson have published and propose to publish excerpts from these letters. Appellants allege they do not know precisely what papers Appellees have.

■ The District Court denied Appellant's motion for injunctive relief pending trial. In exercising the discretion to grant or withhold a preliminary injunction,[1] the District Judge must consider the petitioner's prospect of success on the merits and weigh the interests of the parties and the public.[2] Our review of the District Judge's decision is limited, *Maas, supra* note 1; *see also* Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601 (1951).

The District Judge denied the injunction. Appellants have constructed their appeal on a challenge to the District Court's view of Appellants' rights in property and privacy and argue that these rights can support an injunction even as against the press, where private papers are illegally acquired, without offending the First Amendment.

■ The First Amendment, of course, protects the free expression and exchange of ideas regardless of their merit because this is considered imperative to open and "robust debate" on matters of public interest.[3] Any claim which seeks prior restraint on publication bears a heavy burden. The validity of any such claim depends on a balance of the

---

1. Maas v. United States, 125 U.S.App.D.C. 251, 254–255, 371 F.2d 348, 351–352 (1966).

2. Virginia Petroleum Jobbers Ass'n. v. F. P. C., 104 U.S.App.D.C. 106, 259 F.2d 921 (1958).

3. New York Times v. Sullivan, 376 U.S. 254, 269–270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

interests sought to be protected by the limitation against the injury to free utterance.[4]

■ While the right of expression and publication is not absolute, the balance is always weighted in favor of free expression [5] and tolerance for error is afforded; some utterances are protected not because of their merit or truth but because a free, open society elects to take calculated risks to keep expression uninhibited.[6]

■■ The express purposes and the admitted activities of Liberty Lobby— political lobbying and dissemination of information on highly controversial subjects [7]—render its affairs a matter of public interest. While the term "lobbyist" has become encrusted with invidious connotations, every person or group engaged, as this one allegedly has been, in trying to persuade Congressional action is exercising the First Amendment right of petition. Like other Constitutional rights, the right to petition is subject to abuse and misuse and a vigilant press can expose abuses to public view.

Appellants contend in this court that their case presents considerations not controlled by the First Amendment holdings. They argue that this case does not involve free expression of *ideas* but rather use of private papers illegally taken in violation of rights of privacy and property.

The question here, however, is whether Appellants have made out such a case by their pleadings and evidence. Their complaint alleges that an employee, one Jeremy Horn, in breach of duty and of Appellants' rights, reproduced private documents and delivered copies to others including Appellees who will publish them. Horne admits making copies of various letters and documents which were in his custody while an employee of Appellant Liberty Lobby including publications sponsored by Liberty Lobby and income tax returns of Liberty Lobby. Horne testified in pre-trial depositions that he gave copies of these papers and income tax returns to the F.B.I. and later to Appellees. His testimony was that he did not know whose property these papers were; he refused to answer various questions as to the precise nature of the documents he copied or who owned these papers. Appellants did not pursue the interrogation or seek judicial power to compel answers.

■ Upon a proper showing the wide sweep of the First Amendment might conceivably yield to an invasion of privacy and deprivation of rights of property in private manuscripts. But that is not this case; here there is no clear showing as to ownership of the alleged private papers or of an unlawful taking and no showing that Appellees had any part in the removal of these papers or copies from the offices of Appellants or any act other than receiving them from a person with a colorable claim to possession.

Affirmed.

4. E. g., Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) ; Time, Inc. v. Hill, 385 U.S. 374, 389–390, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); Sheppard v. Maxwell, 384 U.S. 333, 350, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); New York Times Co. v. Sullivan, 376 U.S. 254, 268, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); NAACP v. Button, 371 U.S. 415, 443, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Pennekamp v. State of Florida, 328 U.S. 331, 66 S.Ct. 1029, 90 L.Ed. 1295 (1946); Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); see Justice Black's concurrence in Time, Inc. v. Hill, 385 U.S. at 398, 87 S.Ct. 534.

5. Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946); Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 115, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

6. Time, Inc. v. Hill, 385 U.S. 374, 388–389, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967).

7. The record reveals extensive money raising campaigns to support various programs of "political education," some of which contain overtones of anti-Semitism ad racism which, however reprehensible, are within the areas covered by the First Amendment.

J. SKELLY WRIGHT, Circuit Judge (concurring).

I concur in the opinion of the court.

Lobbying often strikes at the roots of the democratic process. Though protected by the First Amendment's right to petition clause, lobbying is not always in the public interest. Indeed the special interest, represented by the lobbyist as he tries to influence elected representatives of the people, and the public interest may be, and often are, in direct conflict. Moreover, the clandestine character which some lobbying tends to assume makes it imperative that the freedom of speech and of the press provisions of the First Amendment are not paralyzed while the right to petition by lobbying is being exercised. After New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); and Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), it is really too late in the day to suggest that a lobbyist operates other than in a goldfish bowl as far as the law is concerned. See Pauling v. Globe-Democrat Publishing Co., 8 Cir., 362 F.2d 188, 196 (1966), cert. denied, 388 U.S. 909, 87 S.Ct. 2097, 18 L.Ed.2d 1347 (1967).

The public has an interest in knowing who is influencing or attempting to influence their public officers, for what purpose, the means adopted to that purpose, and the results achieved. And the press has a solemn obligation to exercise its First Amendment right to keep the public informed in an area so vital to the democratic process. The stakes in this area of First Amendment freedoms are indeed high, and courts petitioned to act therein must move with restraint lest the balance struck by the First Amendment itself between the two First Amendment freedoms here in suit be upset. Moreover, the constitutional abhorrence particularly to prior restraints on the press, such as by injunction, also counsels judicial restraint. See Near v. Minnesota, 283 U.S. 697, 712–722, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

Application of these principles to this case makes its disposition, in my judgment, relatively simple. Appellants, in their complaint in the District Court, ask not only for injunctive relief but for damages as well. There is no showing that any relief appellants may be, or may become, entitled to cannot be fully afforded by monetary damages. Appellants' suggestion that they have some sort of property right not compensable by money in the copies alleged to have been made of their documents which a court of equity should protect by enjoining their publication leaves me cold. Lobbyists can always use money, and they should have publicity.

The evidence offered on the application for temporary injunction shows only that a disenchanted employee of Liberty Lobby made copies of documents found in its office and gave the copies to appellees who are newspaper columnists. There is no evidence of complicity between the employee and the columnists in obtaining the copies. Nor is there any evidence that the documents copied are private. Moreover, Liberty Lobby, a corporation, has no claim to "privacy." See W. PROSSER, LAW OF TORTS 843 (3d ed. 1964). And Carto is its founder, treasurer and chief lobbyist. The documents alleged to be his were kept in a box in the corporation's office marked "Supplementary Civil Rights File—Personal W. A. Carto." The latter part of that legend indicates only that the documents possibly belonged to Carto and not the corporation. The first part clearly shows that they were not only not "private" but were related to the lobbying in which both Carto and the corporation were engaged. Carto did not testify orally, by deposition, affidavit, or even by verified complaint. On this record there is no possible basis for holding that the District Court abused its discretion in denying the application for temporary injunction. Meccano, Ltd. v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822 (1920); Young v. Motion Picture

Ass'n of America, Inc., 112 U.S.App.D.C. 35, 37, 299 F.2d 119, 121, *cert. denied,* 370 U.S. 922, 82 S.Ct. 1565, 8 L.Ed.2d 504 (1962); Cox v. Democratic Central Committee, 91 U.S.App.D.C. 416, 200 F.2d 356 (1952).

Since the remedy at law here is adequate, no basis for equitable relief by injunction is shown. I agree with the statement of the District Court denying the application for temporary injunction.[1]

---

1. Judge Alexander Holtzoff stated:

"The complaint in this action sets forth that the defendants, Drew Pearson and Jack Anderson, are newspaper men who publish periodical articles in newspapers popularly known as a column. It is also alleged that the two plaintiffs employed the defendant, Jeremy Horn, who unlawfully and in a breach of confidence copied certain letters from the files of the plaintiffs, which the plaintiffs claim are confidential, turned them over to the defendants Pearson and Anderson, who it is alleged are about to publish the contents of those letters or the information contained in them. The plaintiffs sue for damages and for an injunction.

"The case is before the Court at. this time on a motion for a preliminary injunction against the defendants Pearson and Anderson to restrain them from publishing the contents of the letters copied by Horn and turned over to them, or publishing the information therein contained. It is necessary to analyze closely what is before the Court and what is not before the Court. The Court does not have before it at this time the question whether the plaintiffs have a good cause of action for damages for conversion of the letters or for breach of trust or any other similar tort. It is not alleged that the letters were physically purloined from the plaintiffs and consequently the Court does not have before it the question whether an action for replevin for a return of the documents would lie. The only matter that the Court has before it at this time is the question whether it may enjoin newspaper men from publishing copies of documents or information contained in documents that the newspaper men consider newsworthy, merely because the information or copies were obtained by a breach of trust.

"The Court is of the opinion that freedom of the press that is safeguarded by the Constitution and which is one of the basic features of American institutions, is not limited to such information as is personally obtained by newspaper men by observation or from official statements, or in any other open way. The mere fact that a newspaper man obtained information in a clandestine fashion or in a surreptitious manner or because someone unguardedly and unwittingly reveals confidential information, or even through a breach of trust on the part of a trusted employee, does not give rise to an action for an injunction. The courts may not review the manner in which a newspaper man obtains his information and may not restrain the publication of news merely because the person responsible for the publication obtained it in a manner that may perhaps be illegal or immoral. It would be a far-reaching limitation on the freedom of the press if courts were endowed with power to review the manner in which the press obtains its information and could restrain the publication of news that is obtained in a way that the Court does not aprove. If such were the law we would not have a free press; we would have a controlled press. Such, however, is not the law.

"Cases involving publication of letters in violation of a property right in them or in violation of a copyright are not in point. Here we are dealing with the freedom of the press.

"In the light of these considerations the Court is of the opinion that the plaintiffs clearly are not entitled to an injunction restraining the publication of the letters or of the information therein contained. The motion for preliminary injunction is denied."

Liberty Lobby, Inc. v. Pearson, D.C.D.C., 261 F.Supp. 726, 727–728 (1966).