Stewart L. **UDALL**, Secretary of the Interior, et al., Appellants,

v.

D. C. **TRANSIT SYSTEM, INC.**, Appellee.

No. 22031.

United States Court of Appeals District of Columbia Circuit.

Argued July 8, 1968.

Decided July 30, 1968.

Petition for Rehearing Denied Sept. 11, 1968.

Mr. Thomas L. McKevitt, Atty., Department of Justice, with whom Asst. Atty. Gen. Clyde O. Martz and Mr. Edmund B. Clark, Atty., Department of Justice, were on the brief, for appellants.

Mr. Manuel J. Davis, Washington, D. C., with whom Messrs. Wilmer S. Schantz, Jr., and Samuel M. Langerman, Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and BURGER and ROBINSON, Circuit Judges.

PER CURIAM:

On May 1, 1968, the Secretary of the Interior made known his intention to furnish, through the National Park Service, a "visitor interpretative shuttle service" within the Mall area of the District of Columbia.[1] The plan therefor com-

---

1. The federally owned Mall area is a national park, and as such is under the exclusive administrative control of the Director of the National Park Service. D.C.Code § 8-108 (1967 ed.).

bines the transportation of visitors between points of interest in the Mall with monologue on their historical significance. A charge of 25 cents per person would be made for the tour, and the entire operation would be conducted by federal employees supervised by the Service.

Appellee, a common carrier of passengers by bus, functioning in the Washington metropolitan area, instituted suit in the District Court to enjoin the inauguration of this project on grounds that it was beyond the Secretary's statutory powers and in any event would be "competitive" within the meaning of appellee's exclusive franchise.[2] The District Judge, concluding that a violation of the franchise would result,[3] with great financial injury to appellee, granted a preliminary injunction, and from that action this appeal was taken.

The basic idea underlying the Secretary's proposal is not new. During six weeks in the summer of 1966, the National Park Service afforded to Mall visitors a substantially similar facility on an experimental basis. In 1967, the Secretary arranged to continue the service through a nongovernmental concessionaire for ten years under a program contemplating one-hour tours by each of 12 vehicles operating daily throughout the year. This court, however, held that the arrangement was invalid,[4] and that case is now pending in the Supreme Court on a grant of *certiorari*.[5]

Central to the ruling under review was the District Judge's finding that the Secretary's present scheme incorporates substantially the same ingredients as those involved in the earlier lawsuit. Ostensibly on this premise, the judge further found that what is now devised would be "competitive" with appellee's existing services, and might divert from appellee "over a million dollars in annual operating revenue." The record, however, establishes that the current arrangement would endure only until the litigation in the Supreme Court is resolved, and counsel for the Secretary represents that only two vehicles would be utilized. The record also discloses vital differences between the operation the Secretary now proposes and appellee's regular route and sightseeing services in the vicinity of the

2. "No competitive street railway or bus line, that is, bus or railway line for the transportation of passengers of the character which runs over a given route on a fixed schedule, shall be established to operate in the District of Columbia without the prior issuance of a certificate by the Public Utilities Commission of the District of Columbia * * * to the effect that the competitive line is necessary for the convenience of the public." 70 Stat. 598 (1956). The Washington Metropolitan Area Transit Commission now possesses the certificating authority referred to in this section. D.C.Code § 1–1412 (1967 ed.).

3. In its oral opinion, the District Court correctly observed that "[o]n a motion for a preliminary injunction it is not necessary and it is not appropriate to make a definitive decision on such a question, but merely to reach the conclusion that there is a strong likelihood that at trial the plaintiff will prevail. * * *" See Public Serv. Comm'n v. Wisconsin Tel. Co., 289 U.S. 67, 70, 53 S.Ct. 514, 77 L.Ed. 1036 (1933); Young v. Motion Pictures Ass'n, 112 U.S.App.D.C. 35, 37–38, 299 F.2d 119, 121–122 (1962);

Toregas v. Susser, 110 U.S.App.D.C. 177, 290 F.2d 368 (1961); Perry v. Perry, 88 U.S.App.D.C. 337, 338, 339, 190 F.2d 601, 602, 603 (1951). The conclusions of law the court filed, however, incorporate the proposition that "[t]he service proposed by the Defendants, involving a bus operation over a given route on a fixed schedule competitive with Transit's existing operations in the Mall area of the District of Columbia, is subject to the provisions of the Franchise." We neither approve nor disapprove this conclusion since the merits of the case are no more before us on this appeal than they were before the District Judge on the motion for preliminary injunction. See Maas v. United States, 125 U.S.App.D.C. 251, 254–255, 371 F.2d 348, 351–352 (1966); Young v. Motion Picture Ass'n, *supra*, 112 U.S.App.D.C. at 37–38, 299 F.2d at 121–122.

4. Washington Metropolitan Area Transit Comm'n v. Universal Interpretive Shuttle Corp., 129 U.S.App.D.C. 59, 390 F.2d 474 (D.C.Cir. June 30, 1967).

5. 390 U.S. 943, 88 S.Ct. 1040, 19 L.Ed.2d 1131 (1968).

Mall.[6] And the record does not sustain the conclusion that the Secretary's small interim venture would inflict financial injury to appellee of the magnitude envisioned by the District Judge.[7]

Millions of visitors in the Nation's capital are attracted to the Mall annually. Once within that area, they cannot now obtain any point-to-point interpretive service.[8] This is the condition, it seems obvious, that the Secretary desires to alleviate, both modestly and temporarily, until the legal implications of a more adequate and permanent undertaking are settled. But we find conspicuously absent from the decision under review any role assigned to the welfare of so many people.

A preliminary injunction must rest on a convincing presentation.[9] It must, too, eventuate from a careful consideration of all important factors of relevance, not the least of which is the public interest.[10] We are unable to discover in the record before us substantial support for the key factual determinations upon which the District Judge based his action, or any indication that the public weal was placed on the scale. Our decisions have consistently noted the inevitability of reversal where the ruling on a motion for a preliminary injunction was "clearly

6. Appellee's buses in the Mall area utilize only the streets in the Mall over which the District of Columbia exercises jurisdiction. Its fixed routes extend along streets which either are on perimeters of the Mall or traverse its narrower dimensions, and there is no indication in the record that any interpretive commentary is provided on the buses used on these runs.

   Appellee's sightseeing buses are loaded some distance outside the Mall and are not permitted to pick up passengers inside the Mall. The scheduled sightseeing trips are provided at adult per-person fares ranging from $6 to $16, as compared with the Secretary's fare of 25 cents. These trips cover periods of three to eight hours each, and are predominantly tours of points of interest far removed from the Mall. Many operate only once per day, five or fewer days per week from April through October, and some apparently do not touch the Mall area at all.

   Appellee also has sightseeing buses available for charter. But, as is apparent, these are of no benefit to those who visit the Mall either singly or in groups insufficient in size to financially warrant such a charter.

7. The District Judge's projection of "over a million dollars" in probable operating losses to appellee was based upon the affidavit of appellee's vice president estimating regular route losses at $150,000, scheduled sightseeing losses at $375,000, and charter sightseeing losses at $750,-000. The affidavit, however, reveals nothing as to the formula utilized for computing these losses, the individual gross revenues for these services, or the experience during the Secretary's experiment in 1966.

   In Washington Metropolitan Area Transit Comm'n v. Universal Interpretive Shuttle Corp., *supra* note 4, appellee, through the same affiant, had represented identical amounts would probably result from the Secretary's 1967 arrangement. This connotes plainly that the estimates supplied in the instant litigation assumed that the operation the Secretary now proposes would be substantially the same as that contemplated in 1967. We have previously pointed out that there are crucial differences, including importantly the plan to use 12 buses then and only two buses now.

8. As we have stated, *supra* note 6, appellee's regular route service is not a within-the-Mall operation and its sightseeing buses cannot take on persons already in that area. We note additionally that more than a year ago appellee sought authority to add a regular route service on the Mall but its regulatory agency has declined to assign the applications for hearing.

9. See Charles Simkin & Sons, Inc. v. Massiah, 289 F.2d 26, 29 (3d Cir. 1961); General Elec. Co. v. American Wholesale Co., 235 F.2d 606, 608 (7th Cir. 1956); Dymo Industries v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964).

10. See Yakus v. United States, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Mora v. Mejias, 206 F.2d 377, 383–384 (1st Cir. 1953); Huard-Steinheiser, Inc. v. Henry, 280 F.2d 79, 84 (6th Cir. 1960).

error"[11] or "proceeded from an erroneous premise which prevented the court from striking the proper balance,"[12] and so it is here. Probing still deeper,[13] we hold that appellee's showing is something less than the persuasive demonstration upon which an injunctive award must be predicated.

The order appealed from is reversed, and the case is remanded to the District Court with instructions to dissolve the preliminary injunction.

Reversed and remanded.

11. Armour & Co. v. Freeman, 113 U.S. App.D.C. 37, 39, 304 F.2d 404, 406, cert. denied 370 U.S. 920, 82 S.Ct. 1559, 8 L.Ed.2d 500 (1962). See also Maas v. United States, *supra* note 3, 125 U.S. App.D.C. at 254–255, 371 F.2d at 351–352; Young v. Motion Pictures Ass'n, *supra* note 3, 112 U.S.App.D.C. at 37,

299 F.2d at 121; Cox v. Democratic Cent. Committee, 91 U.S.App.D.C. 416, 200 F.2d 356 (1952).

12. Perry v. Perry, *supra* note 3, 88 U.S. App.D.C. at 338, 190 F.2d at 602.

13. Compare Perry v. Perry, *supra* note 3, 88 U.S.App.D.C. at 338, 190 F.2d at 602.