**Norlinda D. PHILBECK, Plaintiff,**

v.

**TIMMERS CHEVROLET, INC., and General Motors Acceptance Corporation, Defendants.**

**Civ. A. No. 16692.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 28, 1973.

Supplemental Order Aug. 24, 1973.

Joseph L. Abraham, Atlanta, Ga., for plaintiff.

Wilkinson, Nance & Wittner, Atlanta, Ga., for General Motors.

Jones, Bird & Howell, Atlanta, Ga., for Timmers Chevrolet.

## ORDER

MOYE, District Judge.

This action was brought by Norlinda D. Philbeck against Timmers Chevrolet and General Motors Acceptance Corporation [hereinafter G.M.A.C.] pursuant to the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq., for allegedly inadequate credit disclosures made in connection with financing a new car. The action is now before the Court on cross motions for summary judgment. The focal point of the motions for summary judgment [1] is whether the Instalment Sale Contract executed in connection with this transaction adequately disclosed the cost of creditor life insurance which plaintiff voluntarily agreed to purchase.

Both the Act [2] and Regulation Z [3] provide that charges for various types of credit insurance must be included in the

---

1. Plaintiff's other contention, that a "Retail Buyer's Order" constituted the contract to which Truth-in-Lending disclosures apply, is specious. The "Retail Buyer's Order" expressly states that it "is not valid unless . . . approved by a responsible finance company as to any deferred balance." Therefore, this document naturally made no pretense of complying with the Act since the credit arrangements of plaintiff's purchase had yet to be completed. The "Instalment Sale Contract" which plaintiff signed after the "Retail Buyer's Order" is an agreement to extend credit to which the disclosure requirements of the Act apply.

Defendant's contention, that plaintiff elected her remedy when she rescinded insurance coverage shortly after signing the contract and cannot now sue for statutory damages, is likewise without merit.

Defendants' reliance on Bostwick v. Cohen, 319 F.Supp. 875 (N.D.Ohio 1970), is misplaced because *Bostwick* involved a statutory rescission of an entire transaction pursuant to 15 U.S.C. § 1635 which applies only to transactions which retain a security interest in real property which is used or expected to be used as the debtor's residence. It is crystal clear that § 1635 does not apply in the instant case which involves an automobile and plaintiff's rescission of the insurance coverage does not constitute an election of remedies to prevent her from suing for statutory damages for allegedly inadequate disclosures made in connection with the credit transaction.

2. 15 U.S.C. § 1605.

3. 12 C.F.R. § 226.4(a)(5)

finance charge unless certain disclosures are made and other requirements are met. The disclosures and requirements are most clearly stated in Regulation Z which provides:

"(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction [must be included in the finance charge] unless

"(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

"(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance." [12 C.F. R. § 226.4(a)(5) footnotes omitted]

The Court has reviewed the Instalment Sale Contract which is the subject of this action and finds it to be in complete compliance with the regulations quoted above.[4] The basis for plaintiff's contention is that although the premium for the insurance was disclosed, this did not constitute adequate disclosure of the "cost" of the insurance because the *term* of the insurance policy was not disclosed. Support for plaintiff's contention is not found in § 226.4(a)(5) of Regulation Z or in the Act but in an Interpretation issued by the Federal Reserve Board and published in the Code of Federal Regulations immediately following the text of Regulation Z.

The Interpretation, 12 C.F.R. § 226. 402, states:

"(a) Under § 226.4(a)(5) and (6) certain disclosures of insurance premium costs, if applicable, are required. The question arises as to whether such amounts of cost disclosed must include the cost of insurance for the full term of the transaction.

"(b) Under § 226.4(h) the cost of insurance for the full period of insurance coverage which the creditor will require shall be disclosed if the cost of the insurance premium is required to be included in the finance charge. However, *if the cost of insurance is not required to be included in the finance charge,* the cost to be disclosed need only be the cost of premiums for the term of the initial policy or policies written in connection with the transaction, *accompanied by a statement of the type of insurance and the term thereof.* (Interprets and applies 15 U.S.C. 1605) [34 F.R. 7608, May 13, 1969]" [emphasis added]

Interpretation § 226.402 clearly requires that for the disclosure of the cost of insurance to be adequate it must be "accompanied by a statement of the type of insurance and the term thereof." But what weight should this Court ascribe to an interpretation issued by the Federal Reserve Board?

■■ That issue was squarely met by a federal district court in Kroll v. Cities Service Oil Co., 352 F.Supp. 357 (N.D.Ill.1972), which determined the weight to be given to Federal Reserve

---

4. The section of the Instalment Sale Contract pertaining to credit insurance states:

Cost of Creditor Insurance
COVERAGE OF THE BUYER BY ANY SUCH INSURANCE IS NOT RE-QUIRED BY SELLER

| Check Creditor | * * * | □ Life | ..........................$_____ |
| Insurance Desired | | □ Disability (Accident and Health) | $_____ |
| | | □ Other (describe) | $_____ |

BUYER'S APPROVAL: I DESIRE TO OBTAIN THE CREDITOR INSURANCE CHECKED ABOVE FOR THE BUYER PROPOSED FOR INSURANCE.

| (Date) | (Buyer's Signature) | (Co-Buyer's Signature) |

Board Interpretation § 226.401. The court stated:

"While an interpretative rule is not binding upon the courts, it is usually held valid 'unless it is plainly erroneous or inconsistent with the regulation,' Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945), Continental Oil Co. v. Burns, supra, 317 F.Supp. 194, 200 (D.Del.1970)." [352 F.Supp. at 363]

This Court is in agreement with the above-quoted statement of the law and, in view of the purpose of the Truth in Lending Act,[5] therefore finds that Interpretation § 226.402 is a valid interpretation of 15 U.S.C. § 1605 and 12 C.F.R. § 226.4(a)(5) and, accordingly holds that when credit insurance is not required by the creditor, the creditor, in disclosing the cost of the credit insurance pursuant to 15 U.S.C. § 1605 and Regulation Z § 226.4(a)(5), must also accompany that disclosure with a statement of the type of insurance and term thereof. This disclosure must be located in compliance with the general requirements of 12 C. F.R. § 226.8. The Instalment Sale Contract in the instant case fails to satisfy these requirements and, accordingly, plaintiff's motion for summary judgment is Granted.

■ Defendant Timmers argues that the Instalment Sale Contract did disclose the term of the insurance in two places. First, Timmers contends the term of the insurance is disclosed on the front side of the contract in the Payment Schedule which states that the total amount due shall be payable in 36 monthly installments. According to Timmers, this served to notify plaintiff of the term of the insurance because the Total of Payments included the Cost of Creditor Insurance and therefore served to disclose the term of the insurance.

The Court does not agree. Merely because the loan was made payable in 36 monthly installments, it does not necessarily follow that the term of the credit insurance must be for that same duration. It is entirely possible that the credit insurance could have been sold for a much shorter period of time than the duration of the installment contract. Therefore, Timmers's argument that the number of monthly payments served to disclose the term of the insurance is without merit.

■ In the alternative, Timmers contends that the disclosure was made on the reverse side of the contract and on the insurance policy itself. The reverse side of the buyer's copy of the contract does contain a section entitled "Notice of Proposed Creditor Insurance on Life of Buyer" and Subsection (b) of the Notice states: "If the insurance becomes effective, the term thereof shall commence on the date of this contract and will (in the absence of default on installment payments) continue until the date on which the unpaid balance of the obligation hereunder is or becomes paid in full, unless the insurance is terminated earlier in accordance with the terms and conditions set forth in the policy or certificate issued by the aforesaid insurer." Although the above-quoted wording fully discloses the term of the insurance coverage, the Notice is not located on the front side of the contract together with other disclosures required by Regulation Z. According to 12 C.F.R. § 226.8: "All of the disclosures shall be made together on either (1) the note or other instrument evidencing the obligation on the

---

5. The purpose of the Truth in Lending Act, as stated by Congress, is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. In order to assure meaningful disclosure, the terminology and methods of calculation must be uniform. Therefore, while the requirements of the Act and Regulation Z are rather technical, they were intended to insure uniform disclosure so consumers could easily compare credit term offered to them. Interpretation 226.402 merely serves to further define "cost" of credit insurance so as to effectuate uniform and full disclosure.

same side of the page and above or adjacent to the place for the customer's signature; or (2) one side of a separate statement which identifies the transaction." Therefore, the notice contained on the reverse side of the contract is not located in compliance with the requirements of Regulation Z. Likewise, the disclosure of the term of insurance located on the insurance policy which was issued after the transaction was consummated is also inadequate because it is not located in conformance with § 226.8 as explained above.[6]

Having decided that the Instalment Sale Contract in the instant case fails to comply with the disclosure requirements of the Act and Regulation Z as interpreted, there remains one other issue to dispose of: Who is liable for the statutory damages and attorney's fees?

Plaintiff contends that both Timmers and G.M.A.C. are liable as "creditors" under the Act.[7] Under the Act and Regulation Z a "creditor" is one who regularly extends or arranges for the extension of credit, for which the payment of a finance charge is required, in connection with sales or loans to consumers. 15 U.S.C. §§ 1602(f) and 1605(a), Reg. Z § 226.2(k) and (m). Based on the facts contained in answers to interrogatories, and the Instalment Sale Contract itself, it is clear that defendant Timmers extended credit to plaintiff in connection with the purchase of the auto-

mobile and under the above definition is liable for the statutory damages and attorney's fees. Further evidence of Timmers's status of "creditor" is also shown by the assignment of the contract to G. M.A.C. because Timmers could not assign the contract to G.M.A.C. without first having rights under the contract itself. But the assignment of the contract leads the Court to the plaintiff's second argument concerning liability.

Plaintiff argues that G.M.A.C. is also liable as a "creditor" for violations of the Act because it is a finance company which regularly extends or arranges for the extension of credit to consumers through the use of assignors of contracts such as defendant Timmers. Support for plaintiff's theory is found in an emerging line of cases which have held finance companies to be "creditors" when the seller merely serves as a "conduit" for placing the finance companies' contracts with consumers and then regularly assigns the contracts to the finance companies.[8] In the latest reported opinion which has considered this theory of recovery, Garza v. Chicago Health Clubs, Inc., 347 F.Supp. 955 (N.D.Ill., E.D. 1972), the court denied defendant finance companies' motions for summary judgment stating:

"After careful consideration of the arguments of the parties and the statutory language itself, this Court concludes that assignees of consumer re-

---

6. If the creditor chooses to make the disclosures on the contract, there is but one exception to the requirements of § 226.8 that all disclosures be on one side of the note and above or adjacent to the place for the customer's signature. That exception is contained in Interpretation § 226.801 which permits some disclosures to be placed on both sides of the note to facilitate mechanical or electronic processing provided that "both sides shall contain the statement, 'NOTICE: See other side for important information,' and the place for the customer's signature shall be provided following the full content of the document." 12 C.F.R. § 226.801(b). An inspection of the Instalment Sale Contract in the instant case reveals that this notice has not been made and the customer's

signature location is at the bottom of the front side of the contract only whereas the disclosure of the term of insurance is located on the back side of the contract.

7. Plaintiff also contends that G.M.A.C. is liable for violations of the Act as an assignee of a contract which contains a violation of the Act on its face. Although there may be merit to plaintiff's argument based on an interpretation of 15 U.S.C. § 1641, the Court renders no decision on this theory of recovery against defendant G.M.A.C. in light of the "conduit" theory explained later.

8. See, Garza v. Chicago Health Clubs, Inc., 347 F.Supp. 955 (N.D.Ill., E.D.1972), and cases cited therein.

tail installment sales contracts who regularly extend or arrange for the extension of credit to consumers through the assignors of such contracts may themselves be 'creditors' within the meaning of, and subject to liability under, Truth in Lending. To put it another way, lendors may not escape TIL [Truth in Lending] status as creditors by using sales companies as 'front men.' " [347 F.Supp. at 964]

While the *Garza* court's opinion was directed only to the denial of the finance companies' motion for summary judgment and did not constitute a final decision of that court with respect to their liability, this Court has sufficient evidence before it to grant plaintiff's motion for summary judgment and hold G. M.A.C. liable for the previously explained violation of the Truth in Lending Act.

The affidavit of R. W. Timmers, Finance Manager of Timmers Chevrolet, states:

"Timmers Chevrolet, Inc. does not direct purchasers of automobiles to any particular lending institution. A purchaser who needs to finance his automobile is given a list of three financing institutions and makes his own choice from among those three. Timmers Chevrolet, Inc. then submits the credit application to that lending institution and if it is approved by said institution, we sell the automobile to the purchaser. We do not execute the Retail Buyer's Order until the purchasers' credit application has been approved. We assign the contract to the lending institution and receive a fee from them. In this instance, we received $177.26 for assignment of the contract, which is not a very high profit on the sale of an automobile.

"The forms we use for Installment Sale Contracts are furnished to us by the various lending institutions and are carefully prepared in compliance with the Federal Truth in Lending Act. The contract form used in this case was a G.M.A.C. form because the Plaintiff directed us to submit her credit application to G.M.A.C. It is immaterial to us what lending institution a purchaser desires. We assign contracts to the First National Bank and the Fulton National Bank, for example, as well as G.M.A.C."

Furthermore, G.M.A.C. and plaintiff agreed to the following stipulation of fact:

"The contract in question and other similar contracts were purchased by defendant GMAC from defendant Timmers in the regular course of the business of defendant GMAC and the vehicles described in said contracts were represented by the purchasers to the seller to be primarily for personal, family, household or business or agricultural use."

This stipulation together with the above-quoted statements from the affidavit of R. W. Timmers, are sufficient to establish that defendant G.M.A.C. regularly used defendant Timmers as a conduit through which to place its installment sale contracts with consumers. Defendant G.M.A.C. prepared the contracts and gave them to defendant Timmers and then, in the regular course of business, Timmers assigned and G.M.A.C. accepted the installment sale contracts back. Under this situation the Court holds that G.M.A.C. should be considered to be a "creditor" within the definition of the Act and held liable for violations appearing on the face of the contract which it prepared.

It should be noted that it does not necessarily follow from the Court's ruling that all assignees of consumer credit contracts will be held liable for violations apparent on the face of the contract, nor will anyone who prepares a consumer credit obligation necessarily be held liable for violations of the Act appearing on the contract form itself. What the Court does hold is that when a finance company works so closely with an extender of consumer credit that the finance company prepares the credit

forms and the extender then executes those forms and regularly assigns the consumer credit contracts back to the finance company, the finance company must be considered to be a "creditor" for purposes of the Act and both the finance company and the extender of credit will be jointly held liable for the statutory damages and attorney's fees.

The statutory damages for a violation of the Truth in Lending Act are computed in accordance with 15 U.S.C. § 1640(a). That section provides that damages are computed by doubling the amount of the finance charge imposed in connection with the transaction but that the amount recovered shall never be less than $100 or more than $1,000. Furthermore, a successful plaintiff may recover the costs of the action and reasonable attorney's fees. Since the finance charge imposed in this transaction was $710.08, plaintiff shall recover 'the statutory maximum damages awardable: $1,000. The Court will conduct a hearing on September 7, 1973, at 10:00 a.m., in Room 226, Old Post Office Building, Atlanta, Georgia, at which time evidence will be taken on the issue of reasonable attorney's fees and costs of this action.

With respect to both the $1,000 damages, attorney's fees, and costs of action, defendants G.M.A.C. and Timmers are jointly liable to the plaintiff for the total amount due.

In view of the above disposition of this action, defendants' motions for summary judgment are Denied and Timmers's motion to strike plaintiff's affidavit is Denied.

### SUPPLEMENTAL ORDER

Although the time had passed for the filing of a proper motion, the Court accepted a letter from defendant G.M.A.C. which was, in effect, a motion for reconsideration of this Court's order dated June 28, 1973, granting summary judgment for the plaintiff Philbeck. The Court directed plaintiff to respond to the contentions set forth in G.M.A.C.'s letter and, after considering the issues raised and the responses thereto, the Court has decided to adhere to its order of June 28, 1973, granting summary judgment for the plaintiff.

 On August 6, 1973, the Court held a hearing at which it heard testimony on the issue of attorney's fees which are awardable in Truth in Lending actions pursuant to 15 U.S.C. § 1640(a). After considering the testimony presented at the hearing, the Court hereby orders that the plaintiff shall recover $2,520 in attorney's fees (72.2 hours at $35 per hour). As stated in this Court's order dated June 28, 1973, G.M.A.C. and Timmers Chevrolet shall be jointly liable for the $1,000 statutory damages, $2,520 attorney's fees, and costs of this action. This constitutes a final, appealable order in the above-styled action.