James W. PRICE, Appellant,

v.

**FRANKLIN INVESTMENT COMPANY, INC., et al.**

No. 76–1022.

United States Court of Appeals, District of Columbia Circuit.

Argued April 27, 1977.

Decided Feb. 23, 1978.

Al J. Daniel, Jr., Washington, D. C., for appellant.

Charles R. Donnenfeld, Washington, D. C., with whom Cameron M. Blake, Washington, D. C., Dennis A. Davison and Bernard D. Lipton, Silver Spring, Md., were on the brief for appellee, Franklin Inv. Co., Inc.

Stanley M. Karlin, Silver Spring, Md., for appellee, Center Motors, Inc.

Before MacKINNON, ROBB and WILKEY, Circuit Judges.

Opinion for the court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

The principal question raised by this appeal is whether, on the facts of this case, a finance company that purchased a consumer installment contract from an automobile dealer shared the dealer's liability for violations of the Truth in Lending Act, Title I of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601–66 (1970 & Supp. V 1975), and the Federal Reserve Board's Regulation Z, 12 C.F.R. §§ 226.1–.1002 (1977). The district court, in granting summary judgment in favor of the finance company, answered this question in the negative. We

reverse on this issue, but affirm the order of the district court in other respects.

## I.

The facts are substantially undisputed. On June 5, 1972, appellant, a District of Columbia resident, purchased a used 1971 Ford Pinto automobile from appellee Center Motors, Inc. (Center), an automobile dealer located in Maryland about a mile outside the District of Columbia. On November 5, 1973, appellant traded the Pinto in to Center on a used 1972 Ford Torino. In each case, appellant signed a "Conditional Sales Contract" filled out by Center. While Center was denominated in the contracts as the lender, the contract forms were supplied by appellee Franklin Investment Company, a financial concern whose sole office was located in the District of Columbia and the forms provided that payments were to be made not to Center but to the "assignee." Center and Franklin enjoyed a close and long-standing relationship. Center normally did no credit investigation of its own, and admittedly did no such investigation in connection with either advance of credit to appellant. Franklin financed at least a portion of Center's car inventory on a "floor plan" basis (App. 286–87) and purchased at a discount a substantial percentage of Center's loan contracts. From 1970 to 1973 not less than 16% of the total conditional sale contracts purchased by Franklin were acquired from Center (App. 257). On each assignment, $25 was placed into a "reserve account" available to compensate Center for its liabilities on contracts sold with recourse or repurchase rights.[1]

The loan contract on the Pinto was assigned to Franklin on the day of the sale. When appellant traded in the Pinto, Center initially wrote the conditional sales contract for the Torino to require payment in a lump sum on the following day, and then on November 7, 1973, substituted a rewritten contract providing for installment payment. Franklin had apparently reapproved appellant's credit during the interim, and the rewritten contract was then assigned to Franklin. Franklin subsequently sent appellant a coupon book and letters referring to him as its "customer" and soliciting his further business.

Soon after the trade-in, appellant had mechanical problems with the Torino. Repairs by Center did not cure the problems, and Center refused to make further repairs. Appellant arranged for transmission repairs by a private shop and notified appellees of this fact, but declined to pay the repair charges or make any further payments on the contract. Franklin then repossessed the car from the repair shop, paying for the transmission repairs, and notified appellant that he could redeem the car by paying an amount totaling about $644. This sum consisted principally of the amount claimed to be due on the contract, the repair charges, and storage charges. Appellant did not redeem, and Franklin gave notice that the Torino would be sold at public sale. However, the car was apparently sold privately to Center, and a deficiency of about $351 was assessed against appellant.

On November 5, 1974, appellant filed suit in the district court against Center and Franklin, charging that the "Credit Sales Disclosure Statement" dated November 5, 1973 (App. 145) prepared by Center in connection with the Torino conditional sale contract contained violations of the Truth in Lending Act and Regulation Z,[2] and that Center and Franklin were jointly liable to him for these violations. Appellant also asserted a number of "pendent" state-law claims, including usury, "loan sharking,"

---

1. Center asserts it was *its* policy to deduct "$25.00 from the face value of each contract assigned to Franklin . . . " (App. 280). Franklin identified this $25.00 as a "payment . . . for the assignment of the contract . . . " (App. 237) " . . . to reserve" (App. 256) a "dealer's reserve . . . " (App. 258).

2. Appellant contends that the disclosure statement executed at the time of the Pinto loan contained similar violations, but concedes that recovery for any such violations was barred by the one-year limitations period in section 130(e) of the Act, 15 U.S.C. § 1640(e) (1970).

and breach of warranty, arising out of both loans. He sought damages and injunctive relief on all claims on behalf of himself and a class of persons similarly situated. Appellant later amended his complaint, however, to omit all class action claims. Franklin counterclaimed for the deficiency allegedly due on the conditional sale contract.

The parties filed cross-motions for summary judgment and partial summary judgment. After a hearing the district court held that the Torino disclosure statement had violated the Truth in Lending Act and Regulation Z in several respects. Summary judgment was entered in favor of appellant against Center and Franklin's counterclaim was dismissed. Appellant was awarded the maximum statutory penalty of $1,000 plus costs and attorneys' fees,[3] but no injunctive relief was ordered. The district court entered summary judgment against the appellant on his claims against Franklin and dismissed his state law claims against both defendants for lack of jurisdiction. On May 17, 1976, appellant demanded and received Center's payment of the $1,000.00 penalty and court costs, but the amount of the reasonable attorneys' fees still owing remains to be determined. Appellant now challenges the district court's grant of summary judgment in favor of Franklin and its dismissal of the state claims, as well as the court's refusal to enjoin further violations by the appellees. Neither Center nor Franklin has appealed.

**3.** Section 130(a) of the Act, as amended in 1974, provides

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
(1) any actual damage sustained by such person as a result of the failure;
(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; [and]

## II.

As a threshold issue, both appellees argue that this appeal became moot when appellant accepted Center's tender of part payment of the judgment against it. Alternatively, they assert that this acceptance either waived appellant's right to challenge the judgment or estops him from doing so. It is a settled rule of law that a litigant may not accept all or a substantial part of the benefit of a judgment and subsequently challenge the unfavorable aspects of that judgment on appeal.[4] There is, however, a "firmly established exception that when a judgment or decree adjudicates separable or divisible controversies, the appealing party may accept the benefit of the separable or divisible feature in his favor and challenge the feature adverse to him . . ." *Luther v. United States*, 225 F.2d 485, 497 (10th Cir. 1955), and cases cited therein.

In the present case, two reasons suggest that the claims against Center and Franklin are sufficiently "separable" that an appeal is not foreclosed despite appellant's acceptance of Center's payment. First, on appeal, since Franklin and Center occupy a different status, the statute might be construed to allow a separate statutory recovery against each defendant. Second, even if the statute is construed to allow only a single penalty, the two appellees might be held to be jointly liable. Such a determination would be relevant on remand, as the amount of the reasonable attorneys' fees still owing will vary depending

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a) (Supp. V 1975). As it applies to the individual plaintiff in the present action, this language represents no substantial change over the original language of this section. We therefore need not determine whether damages in the present action are controlled by the pre-amendment or post-amendment language. *Cf.* notes 13 & 19 *infra*.

**4.** *See, e. g., Cherokee Nation v. United States,* 355 F.2d 945, 949 (Ct.Cl.1966); *Luther v. United States,* 225 F.2d 495, 497, 174 Ct.Cl. 131 (10th Cir. 1955); *Stein v. Stein,* 83 U.S.App. D.C. 286, 170 F.2d 162 (1948).

on whether or not appellant is deemed to have been successful against Franklin so as to merit an award of court costs and fees attributable to this part of its action under the Act. The Act clearly intends that the award of fees and costs is at least as important a part of a plaintiff's potential recovery as the small statutory penalty it establishes.[5] Thus, issues affecting the determination of these fees have an independent significance and should be appealable under the *Luther* standard. Having determined on this basis that the case before us is not moot, we proceed to the merits of the appeal.

### III.

As to the federal claims, the district court's amended order contained only the conclusion that Center violated the Act and Regulation Z in several respects, and the conclusion that Center alone was liable to appellant for the violations. The court made no summary of material facts not in issue, and did not offer any explanation of his conclusions of law. The review process therefore must begin with a reconstruction of the reasoning of the district judge.

The district court held, on the facts most favorable to Center, that Center was liable for violations of the Act and Regulation Z. This holding necessarily rests on the conclusion that Center was a "creditor," [6] and that as such "creditor" it was required to make the required disclosures. These holdings are not challenged by any party to this appeal.

Nor is there any challenge to the specific violations found by the district court. The district court concluded that the disclosure statement violated three parts of Regulation Z: (1) 12 C.F.R. §§ 226.4(a)(3), (2) 226.6(d), and (3) 226.8(b)(4). Section 226.-4(a) provides that the amount of any finance charge shall be computed to include "(3) Loan fee, points, finder's fee, or similar charge." [7] Section 226.6(d) provides that "[i]f there is more than one creditor . . in a transaction, each creditor . . . shall be clearly identified . . . ." [8]

---

**5.** Section 130(a)(3), 15 U.S.C. § 1640(a)(3) (Supp. V 1975). *See* note 2 *supra.*

The award of attorneys' fees alone will frequently exceed the statutory penalty of section 130(a)(2)(A). *See, e. g., Manning v. Princeton Consumer Discount Co.,* 533 F.2d 102, 107 (3d Cir.), *cert. denied,* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976) ($1980 fees; $1000 penalty); *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928, 933 (E.D.La.1974), *aff'd mem.,* 500 F.2d 1182 (5th Cir. 1975) ($2000 fees; $644.56 penalty); *Philbeck v. Timmers Chevrolet, Inc.,* 361 F.Supp. 1255, 1262 (N.D.Ga.1973), *rev'd on other grounds,* 499 F.2d 971 (5th Cir. 1974) ($2520 fees; $1000 penalty).

**6.** The term "creditor" is defined in section 103(f) of the Act, 15 U.S.C. § 1602(f) (1970), and in 12 C.F.R. § 226.2(s) (1977). The latter provides:

"Creditor" means a person who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit, which is payable by agreement in more than four instalments, or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise. . . .

The term "credit" is defined generally as the "right granted by a creditor to a debtor to defer payment of debt. . . ." 15 U.S.C. § 1602(e) and 12 C.F.R. § 226.2(q) (1977).

**7.** Section 226.4(a)(3) is definitional. The substantive requirement that the "finance charge," as defined, be disclosed in a "credit sale" appears in section 128(a)(7) of the Act, 15 U.S.C. § 1638(a)(7) (1970), and 12 C.F.R. § 226.-8(c)(8)(i) (1977).

A "credit sale" is defined in identical terms by both the Act and the Regulation to mean "any sale with respect to which consumer credit is extended or arranged by the seller." 15 U.S.C. § 1602(g) (1970); 12 C.F.R. § 226.2(t) (1977). "Consumer credit" is defined in section 226.2(p) to "mean[] credit offered or extended to a natural person, in which the money, property, or service which is the subject of the transaction is primarily for personal, family, household, or agricultural purposes." There is no question that the transaction between Center and appellant was a "credit sale."

**8.** The provisions of section 226.6 do not actually mandate specific disclosure requirements, but provide "general rule[s]" applicable to the specific disclosures required by section 226.8. The specific requirement that the identity of the "creditor" be disclosed in consumer credit transactions "other than open end" appears in section 128(a) and subsection (10) thereof, 15 U.S.C. § 1638(a)(10) (1970), and 12 C.F.R. § 226.8(a) (1977). *See also* section 121(a), 15 U.S.C. § 1631(a).

Section 226.8(b)(4) requires the disclosure of "[t]he amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

The principal issue raised in this appeal is whether the district court properly entered summary judgment in favor of Franklin on appellant's claims. This is a question of first impression in this jurisdiction.

### A

Franklin may be held liable under the Truth in Lending Act if it can be successfully characterized as a "creditor." Section 121(a) of the Act, 15 U.S.C. § 1631(a), provides that "[e]ach creditor" shall make the required disclosures, and section 130(a) provides that "*any creditor* who fails to comply with any requirement imposed under this chapter with respect to any person is liable to such person . ." in the sums specified in the statute. 15 U.S.C. § 1640(a) (emphasis added). The definition of "creditor" in both the Act and Regulation Z includes those who regularly "arrange for the extension of" credit as well as those who "extend" credit.[9] The district court clearly considered that Franklin was a "creditor." In concluding that Center had violated section 226.6(d), which requires the disclosure of the identity of "each creditor,"—"*if there is more than one creditor* . . .*" (emphasis added)—the district court necessarily concluded that both Franklin and Center were "creditors" on the Torino loan. No other possible "creditors" are involved. Moreover, the court's finding that Center had failed to disclose a "[l]oan fee, points, [or] finder's fee," section 226.4(a)(3), presumably was based on the $25 rebate from Franklin to Center, and further suggests that the district court concluded that Franklin was a "creditor." [10]

Other courts have had no difficulty in concluding that under the Act and Regulation Z, a seller who arranges credit with a lender on behalf of a customer, but who does not himself become *bound* on the instrument, is nevertheless a "creditor" liable for failure to make required disclosures.[11] A number of other courts have confronted the situation like that in the present case, in which a seller of goods executes a loan contract with the customer, and then immediately assigns the contract to a finance company. Based on the nature of the transaction and the relationship between the two defendants, virtually all of these courts have concluded that the seller acted as a "conduit" for the finance company and held that both were "creditors" liable for the failure to make disclosures required by the Truth in Lending Act and Regulation Z.[12]

---

**9.** Section 103(f), 15 U.S.C. § 1602(f) (1970); 12 C.F.R. § 226.2(s) (1970). Regulation Z defines "arrange for the extension of credit" to mean: to provide or offer to provide consumer credit . . . which is or will be provided by another person under a business or other relationship extended to which the person arranging such credit . . .

   (1) Receives or will receive a fee, compensation, or other consideration for such service, or

   (2) Has knowledge of the credit or lease terms and participates in the preparation of the contract documents required in connection with the extension of credit . . . . 12 C.F.R. § 226.2(h) (1977).

**10.** Since Franklin and Center have not appealed the court's determination in this respect, we do not reach the question as to whether this deduction for a reserve fund to cover future losses comes within the description of a "[l]oan fee, points, finder's fee, or similar charge . ."

Section 226.4(a). At first blush, as a reserve fund for future losses, it seems wholly dissimilar from fees related to the initiation or acquisition of the commercial paper. *Cf. Meyers v. Clearview Dodge Sales, Inc.*, 384 F.Supp. 722, 725–6 (E.D.La.1974). However, apart from this $25 fee there are other facts that stamp Franklin as a "creditor."

**11.** *See, e. g.*, Hinkle v. Rock Springs Nat'l Bank, 538 F.2d 295 (10th Cir. 1976); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871 (7th Cir. 1976); *But cf. Stefanski v. Mainway Budget Plan, Inc.*, 326 F.Supp. 138 (S.D. Fla.1971), *rev'd on other grounds*, 456 F.2d 211 (5th Cir. 1972).

**12.** *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 514–16 (5th Cir. 1976); *Joseph v. Norman's Health Club, Inc.*, 532 F.2d 86, 91 (8th Cir. 1976); *Cenance v. Bohn Ford, Inc.*, 430 F.Supp. 1064, 1068–69 (E.D.La.1977);

In each of these cases, the relationship between the seller and the finance company-assignee very closely resembled that between Center and Franklin in the present case. For example, in *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511 (5th Cir. 1976), Clearview, an automobile dealer, frequently took a financial statement from a prospective customer and submitted it to several credit institutions with which it regularly dealt.

> If any one of the lenders approves the customer's credit, Clearview completes the sale and immediately assigns the commercial papers to an approving lender. This practice of prearranging the assignment of commercial paper is a regular and essential part of Clearview's business and is . . . tantamount to arranging for the extension of credit. . . .

Consequently, in this factual setting, both appellants are "creditors" under the Act. 539 F.2d at 515. Both the dealer and the finance company were held to be "obligated to make the disclosures mandated by the Act and Regulations," *id.*, and both were held jointly and severally liable for the statutory penalties for noncompliance. Similarly, in *Joseph v. Norman's Health Club, Inc.*, 532 F.2d 86 (8th Cir. 1976), the health club sold "lifetime memberships" on an installment plan, immediately assigning the notes, at a prearranged discount, to one of several finance companies. The companies were alerted and did a credit check almost simultaneously with the execution of the note, and refused the assignment of only about five percent of the notes executed. 532 F.2d at 91. On the basis of these facts, the Eighth Circuit reversed the district court's entry of judgment in favor of the finance companies, and remanded for further proceedings.

In entering summary judgment in favor of Franklin on appellant's claims, the district court did not expressly conclude that on the facts most favorable to appellant, the relationship between Center and Franklin was distinguishable as a matter of law from the relationships between the "creditors" in *Meyers, Joseph*, and similar cases. Franklin argues that these cases are distinguishable from the present one because there is no evidence that Franklin dictated to Center "how the [conditional sales contract] forms were to be filled out or the terms of the transaction." Franklin Brief 14.[13] However, we disagree with Franklin's analysis of the law. Cases such as *Meyers* and *Joseph* did not require that the assignee-finance company actually participate

---

*Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928, 930 (E.D.La.1974), aff'd mem., 500 F.2d 1182 (5th Cir. 1975); *Kriger v. European Health Spa, Inc.*, 363 F.Supp. 334 (E.D.Wis. 1973); *Philbeck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255 (N.D.Ga.1973), *rev'd on other grounds*, 499 F.2d 971 (5th Cir. 1974); *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955, 963–65 (N.D.Ill.1972); *Glaire v. LaLanne-Paris Health Club, Inc.*, 12 Cal.3d 915, 922–25, 117 Cal.Rptr. 541, 545–47, 528 P.2d 357, 361–63 (1974). *Cf. Barber v. Kimbrell's, Inc.*, 424 F.Supp. 42 (W.D.N.C.1976) (seller and parent firm both liable as "creditors"). *But cf. Alpert v. U. S. Industries, Inc.*, 59 F.R.D. 491, 498–99 (C.D.Cal.1973) (subsequent assignment was "commercial credit" rather than "consumer credit").

**13.** Franklin concedes that, in response to an interrogatory, Center stated that it had done no credit investigation on appellant but "had the benefit of knowing that Franklin approved [appellant's] credit application." J. App. 265, 280. Franklin argues, however, that this answer does not indicate whether Franklin's approval occurred before or after Center extended credit to appellant. The context of the answer, however, clearly indicates that in extending credit to appellant, Center relied on Franklin's prior approval of appellant's credit.

An affidavit of Franklin's vice president states

> [t]hat he did not contact or communicate with Plaintiff or Defendant Center Motors, Inc., . . . nor does he have *personal knowlege* that any officer or employee of Defendant Franklin contacted or communicated with Plaintiff or Defendant Center, at any time prior to Plaintiff's execution of the respective conditional sale contracts evidencing Plaintiff's purchase of the 1972 Ford Torino and 1971 Ford Pinto . . . . .

J. App. 31–32 (emphasis added). This statement, however, is based entirely on the personal knowledge of the affiant, and does not suggest that any inquiry at all was undertaken into the facts. Thus, it seems possible that even were Franklin's interpretation of the applicable law correct, this case might still come within the principle of *Meyers* and *Joseph*.

with the assignor-seller in drafting the price terms of the loan contract. Rather, it is sufficient under these decisions if the relationship between the defendants is sufficiently close to indicate that the seller was acting as the agent or "conduit" of the assignee in arranging the loan. "Where a finance company becomes an integral part of the seller's financing program, the financing company must bear full responsibility for all disclosure required under the Truth in Lending Act," *Joseph*, 532 F.2d at 92. The closeness of the parties here is strengthened by Franklin's floor plan financing of Center's cars and the provision for consignment of some cars (App. 286–87).

We do not, however, go quite so far as the Eighth Circuit in *Joseph*. The conclusion that Franklin was a "creditor" does not in our view require that it be held liable for all deficiencies in disclosure. Most of the courts that have considered the liability of multiple creditors under the Act have found them liable without fully addressing the effect of Regulation Z, § 226.6(d). That section provides:

■ If there is more than one creditor or lessor in a transaction, each creditor or lessor shall be clearly identified and shall be responsible for making only those disclosures required by this Part which are within his knowledge and the purview of his relationship with the customer or lessee. [2] If two or more creditors or lessors make a joint disclosure, each creditor or lessor shall be clearly identified. [3] The disclosures required under paragraphs (b) and (c) of § 226.8 shall be made by the seller if he extends or arranges for the extension of credit. [4] Otherwise disclosures shall be made as required under paragraphs (b) and (d) of § 226.8 or paragraph (b) of § 226.15.

(Bracketed numbers added).

There has been a split among the Circuits as to the proper construction of this regulation. The Third Circuit, in *Manning v. Princeton Consumer Discount Co.*, 533 F.2d 102 (3d Cir.), *cert. denied*, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 (1976), found that a transaction in which an automobile dealer arranged a loan for a customer with a finance company was in reality a "credit sale," and that both the dealer and the finance company were "creditors" within the meaning of the Act and the Regulation. It held, however, that the duty of each to make the required disclosures, and the liability for failure to do so, was controlled by section 226.6(d). It noted that the first sentence of that section would require "each creditor" to make "those disclosures . . . which are within his knowledge and the purview of his relationship with the customer," but concluded that the more specific language of the third sentence controls whenever a "seller . . . arranges credit." By its terms, the *Manning* court held, the third sentence limits both the duty and the liability to the seller alone.

Three other courts have reached the opposite conclusion. In *Hinkle v. Rock Springs Nat'l Bank*, 538 F.2d 295 (10th Cir. 1976), the Tenth Circuit held that both a seller and the lender with whom the seller arranged consumer financing were liable for the failure to make required disclosures. It cited section 226.6(d) for the proposition "that when there are several 'creditors' they each shall be responsible for disclosures which are within the scope of its relationship with the consumer. . . . and of the data they possess." 538 F.2d at 297. The *Hinkle* court thus relied upon the first sentence of section 226.6(d) in assessing *liability* even though a seller had arranged the extension of credit. The view of the *Hinkle* court was elaborated and adopted in preference to that of *Manning* by district courts in *Williams v. Bill Watson Ford, Inc.*, 423 F.Supp. 345, 354–357 (E.D. La.1976) and a similar result reached in *Lipscomb v. Chrysler Credit*, No. C72–792 (N.D.Ohio 1973).

We concur with the analysis presented in *Hinkle*. We are loathe in the absence of clearly compelling language to adopt a reading that would permit a finance company to escape all liability for nondisclosures by enlisting a seller of goods to arrange for an extension of credit. We are particularly reluctant to do so here because of the close-

ly integrated relationship of Center and Franklin. To the extent that the finance company influences the conduct of the seller, the deterrent purpose of the liability provisions of the Act is advanced by interpreting the first sentence of section 226.6(d) to control liability for failure to make required disclosures. The limitation of "responsib[ility]" in the first sentence to disclosure of matters "within [the creditors'] knowledge and the purview of his relationship with the customer" confines multiple creditors' potential liability to nondisclosures for which they are justifiably held responsible, and is the interpretation most consistent with sections 121(a) and 130(a) and the general purposes of the Act.[14]

The "knowledge" and "purview" tests are not defined in the Act or Regulation Z. They appear to have independent significance primarily in cases involving co-extenders with differing relationships to the customer. In a "conduit" case like the present one, these two tests overlap to a considerable degree. The matters the *Williams* court found not to meet these tests were minor matters collateral to the contract and solely within the control of the seller. In contrast, the matters for which the finance company was held liable in *Hinkle* were essential terms of the contract. At a minimum, the holding that the seller arranged the extension of credit as the "conduit" of the assignee includes the conclusion that the assignee exercised sufficient control over the central terms of the contract to be held liable for their nondisclosure. In addition, the assignee may be charged with the nondisclosure of other matters over which it is shown to have exercised some control.

In the present case, Franklin's identity as a creditor is a sufficient basis upon which to rest liability without placing any reliance upon Franklin's apparent rebate of $25 to Center's reserve account. Thus, as a matter of law, on the undisputed facts, Franklin is liable to appellant for the nondisclosure of its relationship.

### B

The "conduit" theory of creditor's liability under the Truth in Lending Act as it has been described above is applicable to those assignees whose dealings with the assignor were so close that the assignor in reality acted to "arrange for the extension of credit" on behalf of the assignee. In addition, the Act provides for proceedings "against any subsequent assignee," including bona fide assignees, whether or not the primary creditor worked in league with them in obtaining the financing contract. As one would expect, however, Section 131 of the Act, 15 U.S.C. § 1641 (1970) provides for more limited liability for subsequent assignees than that established under the conduit theory. This section states that as to an assignee without knowledge, "written acknowledgement of receipt [of a disclosure statement] shall be conclusive proof of delivery thereof and, *unless the violation is apparent on the face of the statement*, of compliance with this part." (Emphasis added). The clear implication of this language is that a loan customer may obtain a recovery directly from a person who takes assignment of a loan contract accompanied by a disclosure statement containing a "violation apparent on [its] face."[15] Thus, Sec-

---

**14.** The act vests the Federal Reserve Board with broad power to adopt regulations in furtherance of its purposes, section 105, 15 U.S.C. § 1604 (1970), *see Mourning v. Family Publications Service*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), and it could presumably adopt a regulation making express the reading of section 226.6(d) adopted by the *Manning* court.

**15.** A 1974 amendment to the Truth in Lending Act added a new section 115, making this assignee liability express:

Except as otherwise provided in this subchapter, any civil action for a violation of this subchapter which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary.

Act of Oct. 28, 1974, Pub.L.No.93–495, § 413(a), 88 Stat. 1520, *as codified*, 15 U.S.C. § 1614 (Supp. V 1975). Unlike other provisions of the 1974 amendments, this new section was not

tion 131 provides an alternative basis for Franklin's liability if Franklin can be shown to have taken the loan assignment under such a manifestly inaccurate disclosure statement.

■ Appellant contends that various violations were "apparent on the face of the statement" accepted by Franklin. In evaluating these contentions, we must be conscious of the underlying purpose stated in both the original Act and its 1974 Amendments, "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . ." Section 102, 15 U.S.C. § 1601 (Supp. V 1975). *See Mourning v. Family Publications Service*, 411 U.S. 356, 364–365, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). With this purpose in mind we turn to appellant's first contention which is that the description of the collateral and the security interest was inadequate and thus in violation of section 128(a)(10) of the Act, 15 U.S.C. § 1638(a)(10), and Section 226.8(b)(5) of the Regulation. Both the Act and the Regulation require the disclosure of "a description of any security interest . . . to be retained." The disclosure statement in the present case describes the collateral only as "1972 Ford." [16]

In evaluating the adequacy of this description in light of the Act's purpose of providing for meaningful disclosure for credit customers, the reference to a "1972 Ford" seems clearly sufficient. There can be no question that in the setting in which the disclosure statement was prepared and given to appellant, this description fully identified the object of the security interest. It is not the intent of the Act that the disclosure statement be as detailed in all respects as the credit contract itself; this would defeat, rather than serve, the goal of providing usable information to the customer.

The adequacy of the description of the security interest in Center's disclosure statement is a closer question than that of the sufficiency of the description of the collateral, but on balance we conclude that it also was sufficient. The language of the Act and Regulation Z differ somewhat in their statement of how technical a description is required. Section 128(a)(10) of the Act simply requires a "description of the security interest," while the Regulation Z, § 226.8(b)(5) requires a "description *or identification of the type* of security interest" (emphasis added). In the latter, both "description" and "identification" could be read as modifying "type of security interest," thus requiring disclosure in every case of the specific legal "type" into which the security interest falls. *Cf.* Regulation Z § 226.2(z).

The effect of the various "types" of security interests upon a credit customer, however, differs very little, and this information would be of relatively little use to him. Requiring the identification of the "type of security interest" would, accordingly, not comport with the statutory purpose of informing the consumer of his options. Furthermore, a comparison of section 226.8(b)(5) with the section of the Act itself upon which this regulation is based suggests that "description" and "identification of the type" are alternative modifications "of [the] security interest," and under

---

expressly made applicable to pending cases or causes of action already accrued. *See id.,* § 408(e), 88 Stat. 1519.

Nevertheless, we do not find in the language or legislative history of the 1974 amendments any implication that section 131 does not provide, by implication, the same right of recovery made express in section 115. The legislative history of the 1974 amendments, adopted as Title IV of an act concerned primarily with federal deposit insurance, is very limited and indicates only that they were "basically technical amendments designed to improve the ad-

ministration of the Truth in Lending Act." H.R.Rep.No.93–1429, 93d Cong., 2d Sess. 37 (1974) (conference report); U.S.Code Cong. & Admin.News 1974, pp. 6119, 6152. Also *see* 119 Cong.Rec. 25398 (1973) (remarks of Sen. Sparkman), *cited in Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871, 875 n.2 (7th Cir. 1976).

**16.** The disclosure statement appears at R. 38, Pltf.'s Exhibit 5, J.App. 145. The conditional sales contract appears at R. 5, Attachment A, and R. 38, Pltf.'s Exhibit 6, J.App. 146–47.

this reading, it would be sufficient if the creditor described the security interest, even though he did not place it in a legal category. The latter reading adequately serves the purposes of the Act and by avoiding excessive technicality, may actually better inform the consumer than a legally accurate description. The recitation in the disclosure statement that the "transaction is secured by a Security Agreement of even date herewith" was sufficient to put the appellant on notice of the existence of a security agreement and to direct him to the specific agreement, which was readily available for inspection by him prior to his purchase of the automobile. This was a sufficient "description . . . of the security interest" to comply with both the Act and the Regulation.[17]

Other alleged inadequacies in the disclosure statement are the failure to disclose that (1) the contract provides for the payment of attorneys' fees of 15 percent in the event the contract is placed with an attorney for collection, (2) that the contract contains an acceleration clause, and (3) that the creditor retains the right of self-help repossession. Appellant contends that these omissions were violations which were "apparent on the face of the statement." In this respect, however, Section 128(a)(9), 15 U.S.C. § 1638(a)(9), and Regulation Z, § 226.8(b)(4), only require the disclosure of the "default, delinquency, or similar charges payable in the event of late payments." A number of circuit courts have recently interpreted this language to apply only to charges *automatically* payable in the event of late payments or default.[18] This view has been adopted by the Federal Reserve Board itself in interpretation letters.[19] We find this authority persuasive, and accordingly conclude that the optional remedies in question here are not required to be disclosed by the Act or Regulation Z.

It is further obvious from such reading of the statute and Regulation Z, that neither the right of self-help repossession, nor the attorneys' fees that might be due if the creditor *elects* to refer the past due account to an attorney for collection are "default, delinquency or similar charges" which must be disclosed, since these provisions are not automatically invoked. Similarly, the acceleration clause in the conditional sale contract provides: "In the event of death of any Purchaser, or in case of insolvency, bankruptcy, or failure of business, all amounts due hereunder shall *at the option of the Seller* or assigns become immediately due and payable in full without demand or notice." (Emphasis added). This clause, although clearly optional presents a somewhat more difficult question than those providing for self-help or collection of fees, because some courts have held that acceleration represents a "charge" if the unearned prepaid finance charge is not rebated in an amount at least equal to the rebate the purchaser would receive in the event of voluntary prepayment. *See, e. g., Johnson v. McCrackin-Sturman Ford*, 527 F.2d 257, 264–69 (3d Cir. 1975); *Black v. G. B. Enterprises, supra*, mem. op. at 10–15 and cases cited therein. The contract in the present case does not contain an express provision for the rebate of unearned finance charges in the event of acceleration, but the District of Columbia and Maryland law both require

---

17. Appellant relies upon *McDonald v. Savoy*, 501 S.W.2d 400, 406 (Tex.Civ.App.1973), which is factually distinguishable. The disclosure statement in that case recited simply that the "Seller is reserving a security interest in the above vehicle to secure this and any other debt Buyer may owe Seller or any subsequent Holder." No reference was made to any specific security agreement or date of execution. To the extent the *McDonald* court appears to construe the Act and the Regulation in every case to require the identification of the "type" of security interest, we disagree.

18. *Begay v. Ziems Motor Co.*, 550 F.2d 1244 (10th Cir. 1977); *Martin v. Commercial Securities Co.*, 539 F.2d 521 (5th Cir. 1976); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 884 (7th Cir. 1976); *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257 (3d Cir. 1975).

19. The letters are quoted in *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 884–85 n.23.

such a rebate [20] and that is sufficient to preclude characterizing the acceleration as a "charge." In the present case, the District of Columbia had the "most significant contacts" relationship to the contract,[21] and thus its law would apply and require a rebate of unearned finance charges, nor would the conclusion be different if Maryland law was applied. We therefore hold that the acceleration clause did not include a "default, delinquency, or similar charge[ ]."

Finally, appellant argues that a variation between the disclosure statement and the conditional sale contract runs afoul of the requirements of section 128(a)(9) and Regulation Z, § 226.8(b)(4), and is "apparent on the face of the statement." The contract provides that the purchaser "shall pay" a delinquency collection charge of five percent of each installment in default for ten days, while the disclosure statement indicates only that the purchaser *"may be required* to pay a delinquency and collection charge equal to 5% of each installment in default." (Emphasis added). The disclosure statement leaves the impression that the default charge is discretionary with the creditor; the contract, on the other hand, leaves no doubt that these charges are automatic.

We agree with appellant that this inaccuracy was "apparent on the face of the statement." Although the misstatement in question is not an obvious omission that would be "apparent" to one who had not examined the underlying contract, we conclude that if section 128(a)(9) is to provide consumers with the protection Congress intended, the assignee must be held to the knowledge of the underlying contract and of any inconsistency between its terms and the disclosure statement. We have no doubt that the inaccuracy in question is sufficiently serious to constitute a cognizable violation of the Act. As a matter of law, therefore, this variation between the contract and the disclosure statement is "apparent on the face of the statement," and Franklin, as an assignee, is liable for this violation.

### C

Since we hold that Franklin is liable to appellant as both a "creditor" and an assignee, it remains to determine the nature and extent of its liability. Appellant concedes that each violation does not give rise to a separate penalty, but contends that a separate statutory recovery may be obtained from each creditor.[22] The difficulty

---

**20.** D.C.Code § 28–3308 provides:

(b) If such installment loan is precomputed,

\* \* \* \* \* \*

(2) except as provided in subsection (c), upon prepayment in full of the unpaid balance of a precomputed direct installment loan, refinancing, or consolidation, an amount not less than the unearned portion of the finance charge calculated according to this section shall be rebated to the debtor

. . . .

Maryland has a similar repayment requirement. Ann.Code of Maryland 1957, art. 83, §§ 138, 161; 1975, ch. 49, § 3.

**21.** *See* Judge Sobeloff's opinion in *Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mutual Life Ins. Co.*, 319 F.2d 469 (4th Cir. 1963). While Price signed the contract in Maryland, it provided from the outset that it would be "[p]ayable at the office of the assignee [Franklin]" (App. 146). This was in the District of Columbia. From the beginning, assignment was contemplated, and, thus, the contract was finally consummated by delivery and acceptance at Franklin's office in the District of Columbia. Franklin is also incorporated in the District of Columbia. The contacts of a contract are to be evaluated according to their relative importance with respect to a particular issue. R. Lafler, American Conflicts of Law § 147, p. 366 (1959). One of the particular issues here that is of primary importance is the manner of handling unearned finance charges, and since that relates to *payment* of money, with all payments to be made in the District of Columbia, we hold that District law applies. We also note that all provisions of the contract will be completely effective in the District of Columbia. In this respect the District does not enjoy any advantage over Maryland. *Cf., Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wash.2d 893, 425 P.2d 623, 628 (Wash.1967).

**22.** Before the district court, appellant sought only a single recovery from the two appellees, and the appellees contend that it is an impermissible "amendment on appeal" for appellant now to seek a second recovery. Because we conclude that the appellees are jointly liable for a single penalty, we need not address this argument.

with appellant's position is that Franklin's liability as a "creditor" is solely of a vicarious nature, based on the conclusion that Center acted to "arrange the extension of credit" to appellant on Center's behalf. In similar factual situations, the courts have unanimously held that the two "creditors" are jointly liable for a *single* statutory penalty.[23] A new section 130(g) was added by the 1974 amendments, codifying this result:

The multiple failure to disclose to any person any information required under this part to be disclosed in connection with a *single account* under [a] . . . consumer credit sale . . . shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries.[24] (Emphasis added).

This amendment was expressly made applicable to all pending cases [25] and limits the liability of persons held to have violated the Act either as "creditors" or "subsequent assignees."[26] The present case involves a failure to disclose in connection with a "single account"—the contract involving the 1972 Torino. It is therefore clear, both under the prevailing interpretation of section 130(a) and under the new section 130(g), that appellant is entitled only to a single award from the two appellees.[27]

On remand, summary judgment will be entered against Franklin on appellant's claims, and Franklin will be held jointly liable for the penalty assessed against Center. In awarding costs and attorneys' fees, the district court should consider that appellant has been "successful" against both Franklin and Center, section 130(a)(3), 15 U.S.C. § 1640(a)(3). Since appellant does not challenge the district court's conclusion that he suffered no "actual damage" compensable under section 130(a)(1), we do not disturb that portion of the district court's order.

IV.

Appellant also argues that it was error for the district court to dismiss his state claims and deny summary judgment on Franklin's counterclaim on the basis of a lack of jurisdiction.

Under the two-tiered test enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a federal court has *power* to determine "pendent" state-law claims if the "state and federal claims . . . derive from a common nucleus of operative fact" and "are such that [the plaintiff] would be expected to try them all in one proceeding."

23. *See, e. g., Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 520–21 (5th Cir. 1976); *Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 880–81 & n.18 (7th Cir. 1976); *Cenance v. Bohn Ford, Inc.*, 430 F.Supp. 1064, 1070 (E.D.La.1977); *Starks v. Orleans Motors, Inc.*, 372 F.Supp. 928, 930 (E.D.La.1974), aff'd mem., 500 F.2d 1182 (5th Cir. 1975); *Philbeck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255 (N.D.Ga.1973), *rev'd on other grounds*, 499 F.2d 971 (5th Cir. 1974).

24. Act of October 28, 1974, Pub.L.No.93–495, § 407, 88 Stat. 1518 (emphasis added).

25. *Id.*, § 408(e), 88 Stat. 1519, makes section 407 of that Act applicable to all claims that had not "prior to the date of enactment of this Act [October 28, 1974] . . . been determined by final judgment of a court of competent jurisdiction and no further review may be had by appeal or otherwise."

26. Section 130(g) is made applicable, *inter alia*, to sections 130(a) and 130(d) providing for liability for "creditors" and "subsequent assignees."

27. Appellant relies heavily upon a decision that he contends reached the contrary result, *Ljepava v. M. L. S. C. Properties, Inc.*, 511 F.2d 935, 945 (9th Cir. 1975). That case is readily distinguishable, as it involved ten *separate* notes in favor of ten different obligees, arranged by three defendant mortgage brokers. 511 F.2d at 939. *Ljepava* therefore did not involve a single account and does not fall within the rule of section 130(g) and the cases. *See Mirabal v. General Motors Acceptance Corp.*, 537 F.2d 871, 887 n.18.

The Seventh Circuit in *Mirabal* holds that section 130(g) bars separate recoveries based on violations of several disclosure requirements, but assumes, without squarely deciding, that it is inapplicable in determining the liability of multiple creditors for violations in connection with a "single account." We conclude that the new section is broad enough to cover both situations.

In the present case, the Truth in Lending claims arose solely out of the transaction involving the Torino. The state usury and misrepresentation claims based on the earlier Pinto sale did not derive from a nucleus of operative fact common to the federal action, so it was not within the district court's power to consider these claims to be pendent to the federal claims.

The local law claims arising out of the Torino transaction, on the other hand, were within the district court's power to exercise pendent jurisdiction. But these claims would have required the resolution of complex choice of law and substantive questions involving the statutory and common law governing usury, loan sharking, and breach of warranty. All of these claims are completely unrelated to the Truth in Lending claims. Had the district court elected to retain the pendent claims, the result would have been virtually unmanageable for the courts and the parties. In addition, once the local law claims based on the Pinto sale were properly dismissed, the rationale for retaining jurisdiction over the remaining pendent claims became even weaker. Liberal joinder rules in both the District of Columbia and Maryland would probably permit all of these claims to be tried in a single proceeding,[28] resulting in greater economy and convenience than would have resulted from the retention of jurisdiction over the local law claims based upon the Torino purchase alone. We conclude that the district court did not abuse its discretion in dismissing the pendent claims.[29] For the same reason it was proper to deny appellant summary judgment on Franklin's counterclaim.[30]

For the foregoing reasons, we vacate the district court's order of summary judgment in favor of Franklin Investment Company and remand for entry of summary judgment against Franklin on appellant's claims. Appellees Franklin and Center Motors, Inc., will be held jointly liable to appellant for a single statutory penalty under 15 U.S.C. § 1640(a)(2)(A), and costs and fees will be awarded on the basis that appellant has been "successful" against Franklin as well as Center, § 1640(a)(3). In all other respects, the amended order of the district court is affirmed.

*Judgment accordingly.*

---

28. D.C.Sup.Ct.R.Civ.P. 18; Md.R.Civ.P. 313(a).

29. The district courts should take particular care "not . . . to permit the Truth in Lending Act to be used simply as a means to obtain a federal forum for ordinary debtor-creditor controversies between citizens of the same State or not involving the jurisdictional amount . . . ." *Hughes v. Ford Motor Credit Co.*, 360 F.Supp. 15, 19 (E.D.Ark.1973), quoted in *Solevo v. Aldens, Inc.*, 395 F.Supp. 861, 864 (D.Conn.1975).

30. The district court committed no error in denying appellant injunctive relief. The individual appellant had an adequate damage remedy at law, *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and all class action allegations were voluntarily omitted from plaintiff's second amended complaint. *Cf. Maas v. United States*, 125 U.S.App.D.C. 251, 254, 371 F.2d 348, 351 (1966).